State v. Murlin.

THE STATE, *Appellant*, v. MURLIN.

| 137 | 297 |
| 158 | 72 |

Division Two, February 2, 1897.

1. Criminal Law: COAL MINES, OPERATION OF: STATUTE. The act of the legislature approved April 11, 1895 (Laws, p. 226), providing that "in all dry and dusty coal mines discharging light carbonated hydrogen gas, or mines where the coal is blasted off of the solid, shot-firers must be employed to fire all shots after the employees and other persons have retired from the mine," and subjecting the mine owner or agent to fine and imprisonment for violation of the act, is a reasonable exercise of the police power and constitutional.

2. Constitution: STATUTES: AMENDMENT. Constitution (art. 4, sec. 34) requiring the amendatory words of the statute to be set out at length together with the section as amended, does not apply to the express repeal of a section and the enactment of new sections in lieu thereof.

3. **Criminal Law**: OPERATION OF COAL MINES: STATUTE: TITLE.   The· title of the act of April 11, 1895, *supra*, *held* sufficient.

4. ——: ——: ——.   Said act is not objectionable because it does not define the meaning of the expression "shooting coal off the solid."

5. ——: ——: ——: INFORMATION.   An information charging that defendant was the agent of a corporation which owned a coal mine in which coal was removed by shooting off of the solid, and that he willfully and unlawfully operated said mine without then and there having shot-firers employed to shoot the shots after the employees and others had retired from mine, sufficiently states a violation of said act of April 11, 1895.

*Appeal from Macon Circuit Court.*

REVERSED AND REMANDED.

*R. F. Walker*, attorney-general, and *Morton Jourdan*, assistant attorney-general, for the state.

(1) The information in this case follows the language of the statute creating the offense and fully sets out all the facts necessary to constitute the offense and to inform the defendant of the nature and character of the charge he is required to meet.   Laws 1895, p. 226.   (2) It is contended in the motion found in the record that this act is amendatory to section 7077, Revised Statutes 1889.   This is not true.   Section 7077, Revised Statutes 1889, is expressly repealed by the act under which the information is filed (Laws 1895, p. 226); this being true, it was not necessary to set out the original section in full.   Had this section been amended, it should have been set out in full as required by section 33 of article 4 of the constitution. The same is true in reference to the contention that article 2, chapter 115, Revised Statutes 1889, has been amended.   (3) The title and purpose of the act is sufficiently stated and fully complies with the requirements of section 28, article 4, of the constitution.

*State v. Blackstone*, 115 Mo. 426; *State v. Miller*, 100 Mo. 439; *State v. Pond*, 93 Mo. 606; *Ewing v. Hoblitzell*, 85 Mo. 64. (4) Nor is it true that said act is unconstitutional and void, for the reason that it unnecessarily and oppressively restrains the mining of coal and the making of contracts, and it deprives the citizen of his property without due process of law. (5) It was unnecessary for the act to define or set forth the meaning of the term "blasting coal off of the solid." The phrase means literally what the words comprising it indicate, and an attempt to define it would have been but a confusing of terms. The legislature had in view the protection and safety of the men engaged in mining coal. The act is in no sense oppressive or unreasonable and the proper exercise of the police power. It violates no contract and restrains and restricts nobody in the exercise of any right guaranteed under the constitution.

*Adiel Sherwood* for respondent.

(1) The title of the act gives no indication of the legislative intent to provide a penalty for its violation, and the act itself creates an offense and provides a punishment, thus including two subjects: *First*, the penalty, and, *second*, the offense, and one of these, to wit, the penalty, is not expressed in the title of the act, contrary to section 28, article 4, of the Missouri constitution. Cooley, Const. Lim. [5 Ed.], 179. (2) The act is unconstitutional and void, because the offense therein prohibited, blasting coal off of the solid, is not described therein, that is to say, the constituent elements of that offense are not stated, and the offense prohibited was not an offense at common law. The act, therefore, is in violation of section 22, of article 2, of the Missouri constitution, which provides that the accused shall be informed of the nature and cause of

the accusation against him. *State v. Gabriel*, 88 Mo. *loc. cit.* 642. See, also, *People v. Allen*, 5 Denio, 76; *Hall v. State*, 3 Cold. 125; 1 Arch. Cr. Pr. & Pl., p. 68, n. 1; Bishop, Stat. Cr., secs. 418, 421, 422.

GANTT, P. J.—Upon the affidavit of Charles Evans, state mine inspector, the prosecuting attorney of Macon county filed the following information against the defendant:

"Robert W. Barrow, prosecuting attorney in and for Macon county and state of Missouri, informs the court that at the county of Macon and state of Missouri, on the twenty-seventh day of June, 1895, one W. E. Murlin, then and there was the agent of the Kansas & Texas Coal Company, a corporation, the owner of the mine hereinafter mentioned, and that said W. E. Murlin then and there as said agent and as superintendent of the mine hereinafter named, was in charge of, managing and operating mine number 46, of the aforesaid company, and that said mine number 46 then and there was a coal mine, where the coal was removed and taken from its original stratum by blasting off of the solid, and that said W. E. Murlin then and there willfully and unlawfully directed, operated, and worked said mine number 46, then and there willfully and unlawfully having coal blasted off of the solid in said mine and removed therefrom in the various rooms thereof without then and there having and keeping shot-firers employed in said mine to fire all or any shots after the employees, miners, and other persons had retired from said mine, and without having any shot-firers whatever employed in or at work in said mine, while so blasting off of the solid as required by the laws and statutes of Missouri, in section 7077, of the session acts of 1895, at page 227 thereof, but then and there willfully and unlawfully permitted, directed, and caused

State v. Murlin.

the miners in the various rooms of said mine to fire their own shots, while other employees, miners, and persons were still in said mine, in blasting off of the solid as aforesaid against the peace and dignity of the state."

The defendant filed his motion to quash the information.

The grounds of said motion are, briefly, that the information does not charge the violation of any law of this state; does not state the constituent facts constituting any crime; that the section under which it is drawn was not lawfully enacted; is unconstitutional and void, both under the constitution of the United States and of this state, in that it is unreasonable and oppressive.

This motion was sustained and the information quashed.

In due time a motion for new trial was filed and overruled and a bill of exceptions signed, sealed and made part of the record.

The act which defendant is charged with violating was approved April 11, 1895. It provides that, "in all dry and dusty coal mines discharging light carbonated hydrogen gas, or mines where the coal is blasted off of the solid, shot-firers must be employed to fire all shots after the employees and other persons have retired from the mine."

It is further provided that, "any agent, owner, or operator of any coal mine in this state violating the provisions of the preceding section [of which the foregoing provision is a part] shall be deemed guilty of a misdemeanor, and for each offense, on conviction, shall be fined not less than fifty or more than two hundred dollars, or by imprisonment in the county jail not less than three nor more than twelve months, or by both such fine and imprisonment."

The manifest purpose of this legislation is the protection of the lives of coal miners who work in mines in which giant or blasting powder is used to dislodge the coal from its natural bed.

It is only in mines which are operated by blasting coal off of the solid that the duty is enjoined upon the owner, operator, or agent, operating such mine, of employing shot-firers to fire all shots and requiring that such blasts shall be made by the shot-firers after the other miners and operatives have retired from the mines.

Experience has demonstrated the necessity of establishing police regulations for the working of coal mines in order to protect the health and safety of persons employed therein.

So obvious were the dangers of mining coal that the parliament of Great Britain from time to time passed laws for the inspection of such mines and prescribed rules to be observed in the operation thereof. Thus, by 18 and 19 Victoria, ch. 108, it was provided that an adequate amount of ventilation should be constantly produced at all collieries to dilute and render harmless noxious gases and for fencing shafts not in use and air pits and for casing or lining certain shafts not deemed safe; and for signals from the bottom to the surface and for adequate brakes upon all machines worked by steam or water for raising and lowering persons, and requiring all steam boilers to be provided with proper steam gauges, water gauge, and steam valve.

On March 3, 1871, the legislature of Pennsylvania passed a most elaborate act regulating the construction of mines, providing for the safety of miners, and the inspection of mines and attaching penalties for failure to comply with the provisions thereof.   Brightly's Purdon's Digest for 1700 to 1872, p. 1067.

This act proceeded on the line of the act of parliament, but greatly extended the measures looking to the safety of miners. Similar enactments are to be found in Illinois, New York, Ohio, and many other states.

The constitutionality of the Pennsylvania act was assailed the next year after its passage. An injunction was sought by the commonwealth at the relation of a mine inspector against Bonnell et al., to restrain them as owners and operators of a coal mine until they had complied with said act. The substance of the charge was that said Bonnell had not provided and maintained a metal tube from the top to the bottom of said shaft, suitably calculated and adapted for the free passage of sound therein, and through which conversation might be had between persons at the bottom and top of the shaft; nor had he provided a sufficient cover over the carriage used for letting down and hoisting up the persons employed in the said mine, and had not attached a suitable brake to the drum which was used by steam power for the purpose of letting down and hoisting up persons employed in said mine.

It was held that the law was constitutional. Said the learned judge who rendered the decision: "The act, as we view it, is nothing more nor less than a mandate to the operators of coal mines, that they shall so work them as not to injure the health, nor endanger the lives of persons employed in and about them. Of its constitutionality we have not the slightest doubt." Com. ex rel. Williams v. Bonnell, 8 Phila. Rep. loc. cit. 536.

The act in Pennsylvania was the offspring of the mining disasters of "Avondale" and "West Pittston," in which many miners lost their lives.

The legislature of this state was doubtless moved to require mine operators to employ shot-firers to discharge the blasts by the explosion of the Keith and

Perry mine at Rich Hill, on the —— day of ——, in the year 1888, by which twenty-three miners were killed and fifty others burned; the latter only being saved by the heroic action of the superintendent, who nearly lost his life in the effort to save the men. The testimony in that case tended to show that the explosion was caused by the firing of a "windy shot" which was fired at an hour when the.mine was full of miners. Each miner was allowed to bore his own hole in the solid, charge it with giant powder, adjust a fuse, and tamp it, and then fire it. Had the rule prevailed in that mine at that time, requiring all the miners to retire from the mine and directing the shot-firer to fire all the shots in their absence, one life only could have been imperiled by the explosion which followed.

If the legislature can regulate the harmless business of the citizen on the ground that possible fraud may be perpetrated, surely there can be no hesitation in holding that a regulation requiring mine owners, who operate mines in which the dangerous agency of blasting powder is used, to so use and handle that powder as to protect the lives and insure the safety of their miners, is a fair and reasonable exercise of the police power, and within the well recognized scope of legislation.

One of the great purposes of the people of this commonwealth in establishing a legislative department of our state government was to devise ways and rules to conserve the health and lives of its people. The constitution lays down certain great and fundamental principles according to which the legislature is to govern, but it commits to the legislature the right and duty of formulating all auxiliary rules to effectuate the principles of the constitution, and it would be hard to conceive of a more necessary and beneficial exercise of its power than it has shown in prescribing rules for that

class of laborers whose duties so constantly expose them to great perils. It is in no sense unreasonable or oppressive. As to the subject-matter of this legislation we can not doubt its constitutionality.

II. It was made a ground of exception in the motion to quash, that the act of April 11, 1895, amended section 7077, Revised Statutes 1889, and that said section is not set out at length together with the section as amended as required by section 34, article 4, of the constitution of this state.

The act itself furnishes the answer to this contention. It expressly *repeals section 7077* and enacts new sections 7077, 7077a, and 7077b in lieu thereof.

The *repeal* of an act or a section of the statute is one thing, and an amendment thereof another. No such construction as contended for by defendant has ever been given to this provision of the constitution, either by this court or the legislature, and the long established practice to the contrary is fully sustained by sound reason.

III. Equally unsound is the point made that section 7077 is *re-enacted* by mere reference to the title thereof. In the first place, that section is not *re-enacted* at all, and in the second place the title to the new sections is full and comprehensive and clearly indicates the scope of the proposed law. "Mines and Mining; Coal Mines—Inspection." "An act to repeal section 7077, chapter 115, article 2, Revised Statutes of state of Missouri 1889, entitled 'Mines and Mining,' and enact three *new* sections in lieu thereof, to be known as sections 7077, 7077a, and 7077b." "Powder or other explosives in mines to be securely kept in boxes—*shot-firers to be employed*—penalty for violation of act—emergency clause." Laws 1895, p. 226.

IV. Nor is there any force in the objection that the act itself does not define what is meant by "shoot-

Vol. 137 mo—20

ing coal off the solid." The phrase is and has for many years been in common use and well understood among those owning and operating coal mines and their miners. It is very expressive, and simply means the blasting of coal off of its solid face by boring holes into the perpendicular side of the original stratum or bed of coal, loading the same with blasting or giant powder, tamping the same, and then exploding the shot, and by force of the explosion dislodging the coal from its natural bed. It is now generally resorted to instead of digging into the solid. Much larger quantities being thus obtained than by the slower process of cutting in and under with the pick alone. The fact that it is a phrase peculiar to coal mining and coal miners, and technical in that sense, does not affect the act. It is entirely competent for the legislature to use terms of art and technical phrases not understood by every one. This phrase is very suggestive and readily grasped by those for whose benefit it was used, and to whom the statute was primarily addressed.

V. The information clearly points out the portion of the statute which defendant is charged to have disobeyed.

It averred that at the county of Macon on the seventh day of June, 1895, the defendant Murlin was then and there the agent of the Kansas & Texas Coal Company, a corporation, the owner of a coal mine known as mine number 46, and that it was a coal mine in which the coal was removed and taken from its original stratum by blasting off of the solid and said Murlin willfully and unlawfully directed, operated, and worked said mine by having the coal blasted off of the solid and removed from the various rooms thereof without then and there having and keeping shot-firers employed in said mine to shoot all or any of the shots after the employees, miners, and other persons had retired from said mine.

It is obvious, we think, that the pleader has stated every substantive fact essential to the statement of a willful violation of the law requiring that shot-firers shall be employed in mines of this character to shoot the shots after the miners and others have retired. It is not obnoxious to the criticism that it fails to advise defendant of the nature and cause of the accusation against him. The verification is sufficient. *State v. Bennett*, 102 Mo. 356; *State v. Armstrong*, 106 Mo. 395.

In no sense can it be said that this act deprives the mine owner of his property without due process of law. It simply enjoins upon him that he so use his property as not to injure another, and that time honored maxim prohibits one from permitting his servants and employees to so demean themselves in his service as to endanger the lives and health of their co-employees and other persons.

The statute is wise in its purposes, and it is the duty of the courts to enforce compliance with its plain and obvious provisions. The judgment of the circuit court is reversed and the cause remanded to be proceeded with in accordance with the views herein expressed. SHERWOOD and BURGESS, JJ., concur.

