# The State of Indiana *v.* Barrett.

[No. 21,326.   Filed February 5, 1909.   Rehearing denied April 9, 1909.]

1. CONSTITUTIONAL LAW.—*Statutes.—Construction.*—Where a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional, that construction rendering it constitutional will be preferred.   p. 174.

2. CONSTITUTIONAL LAW.—*Statutes.—Invalid Provisions.—Rejection.*—Where portions of an act are invalid and their elimination will leave a complete act, sensible and capable of enforcement against all alike, such portion will be sustained.   p. 174.

3. INDICTMENT AND INFORMATION.—*Negativing Exceptions in Statute.*—All provisos, exceptions and exemptions set out in the statutory clause defining the offense, and which are affirmative

elements thereof, must be negatived in the indictment; but if the offense is completely defined without the provisos, exemptions or exceptions, they need not be negatived. p. 174.

4. STATUTES.— Completeness.— Provisos.— Mines.— Section one of the act of 1907 (Acts 1907, p. 334, §8582 Burns 1908) making it unlawful for any coal mine operator to construct an entry in his mine unless space shall be provided, free from obstruction, at least two feet from the rail, provided that the block coal fields shall be exempt therefrom, is complete without such proviso. p. 175.

5. STATUTES.—Construction.—In construing a statute the courts will try to determine the legislative intent. p. 175.

6. STATUTES.—Exceptions.—Provisos.—Provisos and exceptions, in a statute, are similar, and are intended to restrain the general preceding words in such statute so as to take special cases out of a general class. p. 175.

7. STATUTES.— Construction.— Provisos.— Coal Mines.— Classification.—The act of 1907 (Acts 1907, p. 334, §§8582, 8583 Burns 1908) requiring all coal mine operators to construct entries with two-foot spaces on each side of the tracks therein, "provided, that the geological veins of coal numbers three and four commonly known as the lower and upper veins in the block coal fields of Indiana shall be exempt from the provisions of this act," excludes all operators of block coal mines. p. 175.

8. EVIDENCE.—Judicial Notice.—Public Documents.—Inspector of Mines.—Courts take judicial notice of the statistics published by the Inspector of Mines. p. 176.

9. EVIDENCE.—Judicial Notice.—Coal Veins.—Depth.—Bituminous. —Block.—Courts take judicial notice of the different geological veins of coal in each county, and their relative depths. p. 177.

10. EVIDENCE.—Judicial Notice.—Coal Mines.—Veins.—Courts cannot take judicial notice that geological coal veins No. 3 and No. 4 in Clay county are the same as No. 5 and No. 6 in Knox county. p. 178.

11. CONSTITUTIONAL LAW.—Equal Protection.—The constitutional requirement of equal protection of the law requires only that all persons similarly situated shall be treated alike. p. 178.

12. CONSTITUTIONAL LAW.— Health.— Safety.— Police Power.— Alienation.—The legislature has the inalienable power to enact laws for the protection of the health and safety of the citizens. p. 179.

13. CONSTITUTIONAL LAW.—Statutes.—Purpose.—Ignorance of Legislature.—The courts will presume that the legislature was informed of the reasons demanding the enactment of a law passed by it, and will not overthrow such law, unless it is unreasonable. p. 179.

State *v.* Barrett—172 Ind. 169.

14. CONSTITUTIONAL LAW.—*Coal Mining.—Public Interest.*—The public has a two-fold interest in the mining of coal—one, the production of a highly necessary commodity, the other, the preservation of the health and safety of the miners. ·p. 179.

15. CONSTITUTIONAL LAW.—*Statutes.—Expediency.*—The question of the expediency of a law is entirely for the legislature; and if any state of facts would justify such law, it should be held valid. p. 180.

16. CONSTITUTIONAL LAW.—*Class Legislation.*—Where the classifications made in a statute inhere in the subject-matter, the statute is not bad for class legislation. p. 180.

17. CONSTITUTIONAL LAW.—*Regulation of Business.—Police Power.*—The legislature has the right, under the police power, for the protection of the health and safety of citizens, to regulate the use of private property. p. 181.

18. CONSTITUTIONAL LAW.—*Mining Coal.—Block.—Bituminous.—Classification.*—The legislature has the right to make separate regulations for the mining of bituminous and block coal, though mined in the same field. p. 181.

19. CONSTITUTIONAL LAW.—*Statutes.—Validity.—Doubts.*—To doubt the validity of a statute is to resolve in favor of its constitutionality. p. 182.

From Sullivan Circuit Court; *Charles E. Henderson,* Judge.

Prosecution by The State of Indiana against Charles E. Barrett. From a judgment for defendant, the State appeals. *Reversed.*

*James Bingham,* Attorney-General, *Alexander G. Cavins, Edward M. White* and *William H. Thompson,* for the State. · *Barrett & Barrett,* for appellee.

MYERS, J.—This was a prosecution instituted by the State against the defendant in the Sullivan Circuit Court, by affidavit of the prosecuting attorney, under the act of 1907 (Acts 1907, p. 334, §§8582, 8583 Burns 1908), the charging part of which affidavit was as follows: ''That at and in Sullivan county in the State of Indiana, on July 14, 1908, the defendant was then and there the operator of a coal mine at and in Sullivan county in said State, known as Vandalia Mine No. 10, which mine was then and there on said

day, and had been for a long time prior thereto, operated as a coal mine under the direction of the defendant, and in which mine and at and during all such time laborers, drivers and miners worked; that on and prior to July 14, 1908, said defendant did then and there cause to be made, dug and constructed an entry and trackway in said coal mine, upon and along which a continuous mine car track was laid, upon which loaded cars of coal and empty coal-cars were hauled by mules and motors under the charge of drivers, and along which entries drivers were and are required to drive said mine cars; that said defendant did then and there wrongfully and unlawfully fail to provide in said entries in said mine on either side of said mine car tracks a continuous space of two feet, measured from said car track rail, free from props, loose slate, debris and other obstruction so that the driver, in the event of a wreck, collision or other accident, could get away from the cars run upon said track," contrary, etc. To this affidavit defendant filed an answer, alleging "that he is the secretary of Vandalia Coal Company, and one of the executive committee of said company; that said Vandalia Coal Company owns said mine known as Vandalia Mine No. 10; that said mine is now, and has been for more than two years last past, in operation; that said mine is operated by means of a shaft from the surface to the vein of coal being mined; that, as a part of the system of mining, entries are dug and constructed in various directions from the bottom of said shaft, and in such entries are laid iron tracks upon which cars loaded with coal are hauled, and also empty cars are hauled from said shaft back through such entries; that each vein of coal in the State of Indiana, there being seven or more such geological veins in Indiana, has a well-known geological number, which number is well known to all operators of coal mines and all laborers employed in the mining of coal; that each vein is numbered upward, the lowest being numbered one, and is well defined; that said Vandalia Mine No. 10, situated in Sullivan county, Indiana, and being the mine re-

ferred to in the affidavit on file herein, has its shaft sunk to the vein of coal known as No. 4, which is the vein in which are the entries and trackway referred to in the affidavit on file herein; that in such entries iron tracks are laid, upon which coal-cars are hauled; that the affidavit on file herein is based upon the provision of the act of March 9, 1907 [*supra*], entitled 'an act to regulate the width of entries in coal mines, providing for an unobstructed space in such entries, providing penalties and repealing all laws in conflict,' and it is provided in said act, among other things, as follows: 'Provided, that the geological veins of coal numbers three and four commonly known as the lower and upper veins in the block coal fields of Indiana shall be exempt from the provisions of this act;' that at said Vandalia Mine No. 10 the vein of coal being worked, and the only vein of coal being worked, is geological vein number four, and, under the provisions of the act of 1907 [*supra*], said vein of coal does not fall within the terms of said act, and for that reason this defendant is not guilty and should go acquit."

The State demurred to this answer for want of a defense to the charge in the affidavit. The demurrer was overruled, the State excepted, and, refusing to plead further, the defendant was discharged, and the ruling on the demurrer to this plea is assigned as error.

Section one of the act (§8582, *supra*) provides: "That it shall be unlawful for any owner, lessee, agent or operator of any coal mine within the State of Indiana, to make, dig, construct, or cause to be made, dug or constructed any entry or trackway after the taking effect of this act, in any coal mine in the State of Indiana where drivers are required to drive with mine car or cars unless there shall be a space provided on one or both sides continuously of any track or tracks measured from the rail, in any such entry of at least two feet in width, free from any props, loose slate, debris or other obstruction so that the driver may get away from the car or cars and track in event of collision, wreck or other ac-

cident.   It shall be unlawful for any employe, person or persons to knowingly, purposely or maliciously place any obstruction within said space as herein provided:  Provided, that the geological veins of coal numbers three and four commonly known as the lower and upper veins in the block coal fields of Indiana shall be exempt from the provisions of this act.''

Section two (§8583, *supra*) makes a violation a misdemeanor punishable by fine, not exceeding $200, with possible imprisonment, not exceeding sixty days, in the county jail.

The State urges here, first, that the plea or answer is bad in that it does not disclose that the mine is in the block coal field, or devoted in whole or in part to mining block

1.   coal; that, of two or more possible constructions, that one is preferable which will rescue the act from unconstitutionality, and that the proviso of the act is a constitutional exemption when applied solely to the block coal fields, because of natural distinctions upholding that classification. It may be premised that, of two or more possible constructions of a statute, that one will be adopted, if reasonable, which will rescue the act from unconstitutionality. *State* v. *Lowry* (1906), 166 Ind. 372, 4 L. R. A. (N. S.) 528.

Also, that if the elimination of an invalid portion of an act will leave the remainder complete in itself, sensible and capable of being executed against all alike, the re-

2.   mainder will be enforced.  *Swartz* v. *Board, etc.* (1902), 158 Ind. 141; *Smith* v. *McClain* (1896), 146 Ind. 77; *City of Indianapolis* v. *Bieler* (1894), 138 Ind. 30.

The negative of all provisos, exceptions or exemptions in the clause defining the offense, which are affirmative elements in the offense, must be averred.  But if the offense is

3.   defined without the proviso or exception, and even though in the same section with the enacting clause or clause creating the offense, it does not require negation.  1 Bishop, Crim. Proc. (4th ed.), §§636-639.  An examination

of our own cases will disclose that they all fall within the foregoing rules of construction.

It must be conceded that the act is complete without the proviso, that the latter may be eliminated without impairing or affecting the operation of the act as a whole, that it would still be complete in itself and capable of being executed and of general operation, and, that being true, the act is not open to the objection of being unconstitutional as an entirety, unless it be that the proviso is so intimately connected with the enacting clause as clearly to indicate that it was intended to restrain its operation. We are required as a primary rule of construction to put ourselves in the position of the legislature in the enactment of statutes, and endeavor to arrive at its intention. Provisos and exceptions are similar. They are intended to restrain the enacting clause, to except something which would otherwise be within it, something engrafted upon a preceding enactment, intended to take special cases out of a general class, and the general intent and purpose of an enacting clause will be controlled by the particular intent subsequently expressed. 1 Bishop, Crim. Proc. (4th ed.), §§636-639.

Taking the enacting clause and the proviso together, what are we to understand that the legislature intended? Clearly that the enacting clause should not apply in any way to "geological veins of coal numbers three and four commonly known as the lower and upper veins in the block coal fields." The particular designation of the veins in the block coal fields discloses the reasons operating in the minds of the legislators. The relation of the proviso to the enacting clause and the subject-matter of each must make it quite manifest that the enacting clause was not intended to be operative as to any class of coal mining, unless the block coal fields were not embraced, and we must conclude that the act was intended to be applicable in its entirety, so as to

exclude the block fields, or not at all, and the case is reduced to the proposition whether this classification was a proper one, and this question must be determined by the further inquiry whether it operates alike, and is of general operation as to all citizens similarly situated and affected. Is it based upon differences which are apparent or reasonable? Does it impose burdens from which others of the same class are exempt, or apply to all persons placed in the same or like situations or circumstances, and operate equally upon all who come within the class to be affected, or is it an arbitrary or capricious division or selection of classes, without regard to those requisites of uniform operation, which so broad a power as the police power cannot deny?

It is contended by the State that one of the distinctions upon which this classification is properly based is the difference in thickness of the bituminous veins, and the block veins, the latter being an average of less than four feet in thickness, while the bituminous veins average over five feet, and upon the difference in the number of persons employed in the two fields; that in 1906 thirty-five block mines in the State, with 1,978 employes, produced a total of 746,760 tons of coal, while 175 mines, with 18,286 employes, produced 10,675,357 tons of bituminous coal.

Part of the duties belonging to the Inspector of Mines is to ascertain and report the number and thickness of the veins of coal now, or hereafter to be, 8. worked, and their respective depths below the surface; the kind or quality of coal, how mined, whether by shaft, slope or drift; the number of mines operated in each county, the owners thereof, number of men employed in each, the aggregate yearly production, an estimate of the capital employed, etc., and report to the State Geologist annually, and he, in turn, to the Governor. §§8590-8593, 9338 Burns 1908, Acts 1905, p. 65, §§20-23, Acts 1889, p. 14, §9. These statistics are official public documents, and we take judicial notice of them. *Cary* v. *State* (1884), 76 Ala.

78; *Underhill* v. *Hernandez* (1897), 168 U. S. 250, 18 Sup. Ct. 83, 42 L. Ed. 456; *Kirby* v. *Lewis* (1889), 39 Fed. 66.

We therefore take notice of the different geological veins of coal in each county, and, in addition to the statistical matters heretofore stated, of the relative depths from the surface of the earth, and know that block coal is found at less than one-half the average depth of bituminous coal.

We find the geological strata numbered from one—the lowest—to seven—the highest one. We find block coal only in strata No. 3 and No. 4, known as lower and upper block, but we find bituminous coal in all the strata. In Clay county the bituminous veins—a term applied to the field— are No. 3, No. 4, No. 5 and No. 6. Upper and lower block are not the same as No. 3 and No. 4 bituminous. The average depth from the surface of the block field in the eastern part of Clay county is less than ninety feet, and the average depth in the bituminous field in the western part of that county is about seventy-five feet. In Sullivan county the average depth of the bituminous veins is more than 165 feet. It will thus be seen that the matter cannot be determined upon the mere basis of the geological strata.

The learned counsel for appellee say: "This court will readily understand that if, for illustration, in Clay county, there are but two workable veins of coal, and they are geological veins No. 3 and No. 4, but known in that county as upper and lower veins, and down in Knox county there are two workable veins of coal, the same class of coal, but such coal is in geological veins No. 5 and No. 6, then, under the act under consideration, the Clay county operator does not come under the law, as he is exempted by its provisions, but the Knox county operator must comply with the statute, and therefore the Clay county operator is saved an expense each year in the driving of these extra wide entries; a burden is cast upon one operator, while the operator in the same line

of business and having the same conditions, but working a coal known in the block field as upper and lower veins, and generally classed as geological veins No. 3 and No. 4, is exempted.'' We do not think counsel put the matter fairly.

We cannot take notice that the geological veins No. 3 and No. 4 in Clay county are the same kind of coal as No. 5 and No. 6 in Knox county, for it is a matter of common knowledge that there is a recognized difference between the two kinds of coal. Number 3 and No. 4 in Clay county contain bituminous coal, and in the same strata in other parts of said county are the upper and lower block veins, while in Knox county, as in Clay, veins No. 5 and No. 6 are bituminous. Veins No. 5 and No. 6 in Clay and Knox counties are bituminous, and in Greene county, without any block veins, bituminous coal is the only coal mined. It is thus manifest that the conditions under which the two kinds of coal are found and mined are quite different in the same county and in the same geological strata.

The statute makes the distinction or exemption apply to block mining only, so that the act applies to all bituminous fields alike. Is it then an arbitrary or capricious classification to require conformity to the act by the bituminous operators and not by the block operators? The rule of equal protection of law only requires that persons similarly situated shall be treated alike, or that the law shall be applicable alike to all who are in the same class. Equal protection of the law in each particular case means such an exercise of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one being dealt with belongs. 2 Story, Constitution (5th ed.), §1945.

The legislature evidently had in mind that there were greater hazards in operating bituminous than block mines,

State *v.* Barrett—172 Ind. 169.

and it has the power to protect its citizens in their health and safety. It is a very high power, but one justly exercisable, and one which the legislature cannot alienate. *Cleveland, etc., R. Co.* v. *Harrington* (1892), 131 Ind. 426.

The legislature had the right, and we must presume exercised it, of learning for itself the reasons which impelled it to act, and we cannot say that it did not find substantial reasons for its conclusions. Unless we can say that the act is unreasonable, we would not be authorized to overthrow it, for a very large measure of authority is vested in the legislature upon that subject. *McLean* v. *Arkansas* (1909), 211 U. S. 539, 29 Sup. Ct. 206; *Parks* v. *State* (1902), 159 Ind. 211, 59 L. R. A. 190; *Chandler Coal Co.* v. *Sams* (1908), 170 Ind. 623.

It was said by this court in *Indiana R. Co.* v. *Calvert* (1907), 168 Ind. 321, 10 L. R. A. (N. S.) 780: "Rights for the most part are relative, and the mere fact that a statute or ordinance, which may reasonably be regarded as conducive to the welfare of the public, regulates a trade or business or lays some burden upon it, does not render it unconstitutional." The following cases are in point: *Slaughter House Cases* (1872), 16 Wall. 36, 21 L. Ed. 394; *Munn* v. *Illinois* (1876), 94 U. S. 113, 24 L. Ed. 77.

It may very properly be said that mining coal is a matter in which the public has a twofold and vital interest; one, the production of a highly necessary commodity, and the other the preservation of health, life and limb. That it is a private enterprise is immaterial. It is also affected with the public interests. "Property does become clothed with a public interest when used in a manner to make it of public consequence, and affect the community at large. * * * For our purposes we must assume that, if a state of facts could exist that would justify such legislation, it actually did exist when the statute now under consid-

eration was passed. For us, the question is one of power, not of expediency. If no state of circumstances could exist to justify such a statute, then we may declare this one void because in excess of the legislative power of the State. But if it could, we must presume that it did. Of the propriety of legislative interference within the scope of the legislative power, the legislature is the exclusive judge." *Munn* v. *Illinois, supra.* Classification according to the character of mines, and the character of coal mined, and those giving off certain dangerous gases, has been held valid. *State* v. *Murlin* (1897), 137 Mo. 297, 38 S. W. 923.

In *Holden* v. *Hardy* (1897), 169 U. S. 366, 18 Sup. Ct. 383, 42 L. Ed. 780, the court upheld the constitutionality of an act limiting the hours of labor in underground mines and smelting works, solely upon the ground of the unwholesomeness of the labor. In *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 92 Am. St. 319, the court, in passing upon a statute requiring certain safeguards for employes of coal mines, said, in substance: Employments differ as to hazards; each has its separate dangers which must be guarded against in an appropriate way. To classify legislation by distinctions that naturally inhere in the subject-matter is not to indulge in class legislation. A law is general and uniform, if all persons in the same circumstances are treated alike. The provisions with respect to the operation of mines in the various states for the protection of health, life and limb are extensive and varied, and yet their constitutionality is scarcely questioned. Another familiar example is that of fire escapes and fire appliances upon hotels, theatres, and other buildings, above certain heights, in which people congregate or labor, and in the requirements for guarding machinery. The classification of cities by population for the purpose of different local self-government, though the difference may consist only in a few less than the classification, is upheld. *Evansville, etc., R. Co.* v. *City of Terre Haute* (1903), 161 Ind. 26; *Campbell* v. *City of Indianapolis*

(1900), 155 Ind. 186; *City of Indianapolis* v. *Navin* (1898), 151 Ind. 139, 41 L. R. A. 337.

Legislative regulation of the use of private property must be presumed to be reasonable and necessary, unless the contrary appears from facts of which courts will take notice, and the constitutional right of the citizen to use his property without regulation is plain, unless the public health or protection to life and limb requires that such use be regulated; but if such business, to the legislative mind, requires regulation, the private right must yield. The case of *State* v. *Richcreek* (1906), 167 Ind. 217, 5 L. R. A. (N. S.) 874, 119 Am. St. 491, and cases cited, are instructive and in point here. It is true that the legislature may not, even under the police power, exercise purely arbitrary authority, but every one holds his property and its use under the implied obligation that its use shall not be injurious to a community, or detrimental to health, or a hazard to the safety of those employed in its use.

Suppose we had a case where the mining of bituminous coal was carried on many hundreds of feet below the surface instead of less than an average of one hundred feet in case of block coal, could it be contended that the greater precautions to protect life, health and limb could not be imposed on the deep mine operators, as to light, ventilation, means of escape and the like, than in case of those of the lesser depth? We think not.

That being true, the case before us is one differing only in degree, and not in kind.

It is not unlikely that there is in fact a difference in the degree of danger in mining the two kinds of coal. We at least cannot say the contrary. If so, it must be presumed that the legislature informed itself upon that subject. It may be that mining coal at a distance of 165 feet from the surface is more hazardous than mining it at 90 feet. These matters, with the relative output, relative number of mines and persons employed, may have entered into the consideration

as requiring the act in one case, and not in the other, and while the relative number of employes, mines and the output might not be a proper classification if applied to persons in the same class of work, or under the same conditions, we cannot say that they are not different at different depths and in different kinds of coal, and must presume that they are; at least we cannot say that, as applied to all persons alike employed in mining bituminous coal, the act is invalid because not applicable to block mining, and we cannot say that the act is unreasonable, or determine as to its propriety or impropriety, and to doubt its constitutionality is to resolve in favor of its constitutionality.

It results that the act is constitutional, the affidavit is good, and appellee's answer was not good, for failing to bring himself within the exemption of the proviso.

The judgment is reversed, with instructions to the court below to sustain the demurrer to the answer, that appellee be required to plead over, and for further proceedings in accordance with this opinion.