## The Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company v. State of Indiana.

[No. 22.248.   Filed June 3, 1913.   Rehearing denied October 15, 1913.]

1. Commerce.—*Interstate Commerce.—Regulation.*—When Congress has acted with reference to a subject of interstate commerce, its action is exclusive. p. 249.

2. Railroads.—*Regulation.—Caboose Cars.—Statutory Provisions.—Interstate Commerce.*—The provisions of ·the act of March 1, 1911 (Acts 1911 p. 92), prescribing the kind of caboose which shall be used after June 1, 1914, and that when any caboose car shall be brought into a shop for general repairs, it shall be unlawful again to put the same into service, unless it has been made to comply with the provisions of §2 of the act as to size and construction, are not to be regarded as interfering with, or as placing a burden upon, or as regulating interstate commerce, since they are merely directed at the form of an instrumentality of commerce, as to a matter with respect to which Congress has not seen fit to act. p. 249.

3. Constitutional Law.— *Police Power.— Scope.— Due Process of Law.*—Although property or property rights may not be destroyed under the guise of a police regulation which has no just relation to the protection of the public health, welfare, morals, or safety, the police power is of wide scope, and in its proper exercise may be extended even to the taking and destruction of property and the compelling of large expenditures. p. 250.

4. Constitutional Law.—*Police Power.—Reasonableness of Regulation.—Presumptions.*—It will be presumed that an act passed in the exercise of the police power is reasonable, unless the contrary appears from facts of which the court will take notice. p. 251.

5. Constitutional Law.—*Police Power.—Operation.*—Regulation is the normal form of operation of the police power. p. 251.

6. Constitutional Law.—*Police Power.—Reasonableness of Legislation.*—The wisdom or expediency of a police regulation is for the legislature, but such legislation must not be unreasonable. p. 251.

7. Constitutional Law.—*Police Power.—Reasonableness of Legislation.*—The reasonableness of a police regulation ordinarily depends on whether it is prohibitive, destructive or confiscatory,

or is reasonably adapted to promote a public purpose, or conserve the lives, health or safety of citizens. p. 251.

8. CONSTITUTIONAL LAW.—*Police Power.*—*Reasonableness of Legislation.*—Courts will not attempt fine distinctions to determine that a police regulation is unreasonable, and before they are authorized to interfere with such legislation it must be unreasonable beyond justification under any circumstances. p. 252.

9. CONSTITUTIONAL LAW.—*Determination of Validity of Statute.* —*Admissibility of Evidence.*—The validity of an act of the legislature is necessarily a question of law, and expert or other testimony is not admissible to impeach the legislative determination and show that its act is arbitrary or unreasonable, so that a law will stand unless it can be shown to be in conflict with the Constitution by argument deduced from its language, or from matters of which the courts can take judicial notice. p. 252.

10. RAILROADS.—*Regulation.*—*Safety and Comfort in Cars.*—*Judicial Notice.*—*Constitutional Law.*—The court cannot judicially know that it is not more comfortable or safe to ride in a car of a prescribed length and having two adjustable and oscillating four-wheeled trucks, than in a shorter car having four rigid wheels, so that the court cannot say that the provisions of the act of March 1, 1911 (Acts 1911 p. 92), prescribing the size and equipment for caboose cars are unconstitutional as being unreasonable, but the presumption must prevail that the legislature was possessed of facts showing the same not to be unreasonable. p. 254.

11. STATUTES.—*Validity.*—*Partial Invalidity.*—*Regulation of Railroads.*—*Equipment of Cars.*—Sections 5 and 7 of the act of March 1, 1911 (Acts 1911 p. 92), giving to the Railroad Commission certain powers in the matter of regulating the size and equipment of caboose cars, are independent of and separable from §§2, 3 of the act, so that, if invalid, their invalidity could not affect the provision of §§2, 3. p. 254.

12. CONSTITUTIONAL LAW.—*Determination of Invalidity of Statutes.*—*Parties Who May Attack.*—Where sections of an act are independent and readily separable in their provisions, a defendant in a prosecution based on a valid section thereof will not be heard to complain of the invalidity of sections that are not involved in such prosecution. p. 255.

From Criminal Court of Marion County (40,277) ; *Joseph T. Markey,* Judge.

Prosecution by the State of Indiana against The Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company.

From a judgment of conviction, the defendant appeals. *Affirmed.*

*S. O. Pickens* and *Owen Pickens*, for appellant.

*Thomas M. Honan*, Attorney-General, and *Thomas H. Branaman*, for the State.

MYERS, J.—Appellant was charged by affidavit with the violation of §§ 1, 2, 3 of the act of March 1, 1911 (Acts 1911 p. 92). Section 1 applies the provisions of the act to any corporation, person or persons "while engaged as common carriers in the transportation of passengers or property within this state to which the regulative powers of this state extend." Section 2 prescribes the kind of caboose which shall be used after June 1, 1914, and §3 provides that, "Whenever any such caboose cars or other cars now in use by such common carriers as provided by section 1 herein shall after this act goes into effect, be brought into any shop for general repairs, it shall be unlawful to again put the same into the service of such common carrier within this state unless it be equipped as provided in section 2 of this act." Other following sections define the exceptions, the powers and duties of the railroad commission in respect to the matter, and provide the penalty.

The charge in the affidavit in substance is, that on and prior to July 5, 1911, appellant owned and had in use on its line as a corporation and common carrier, a certain numbered caboose car, resting on four wheels, and 18 feet 6 inches in length, exclusive of the platforms on each end. On that date it was sent to the shops of appellant in the State of Indiana for general repairs, and after having been repaired was on August 22, 1911, owned by, and put into service on appellant's lines in the State of Indiana, and continuously thereafter used in such service. The same was not as so used, at least 24 feet in length exclusive of the platforms, and was not equipped with two four wheeled trucks. All exceptions of the statute are negatived.

There was a motion in writing to quash for several reasons, all attacking the constitutionality of the act, and various sections of it, on various grounds, which motion was overruled, and exception to the ruling reserved. Appellant then filed a special plea, that the facts alleged do not constitute a public offense, and alleging other like facts to those alleged in the motion to quash. A demurrer to this plea for want of facts to constitute a defense was sustained, and appellant excepted, and upon a plea of not guilty, appellant was tried and found guilty, and a fine of $100 imposed, and over motion for a new trial on the grounds that the finding is contrary to law, and not sustained by sufficient evidence, and over motion in arrest of judgment for the reasons set out in the special plea, judgment was entered.

As the validity of the law is the sole question presented, it is not necessary to consider any other question, except to say, that the admissions and evidence show appellant to be a common carrier engaged in interstate commerce, and that the value of the particular car when it went into the shops was $380, and when repaired $442, and that the salvage in making the caboose correspond to the act of 1911 would be $185; that appellant has 251 like cars, like employed as the car in question, and that like cars have been in use by appellant fifteen years, and that it would now cost approximately $1,150 each, to construct the cars to conform to the requirements of the act of 1911, with a salvage of $185; that the timber in the present cars would be valueless, and only the iron portions, and the cupola usable; that fifty of the cars in use, cost approximately when built $470, and the remainder $875 each; and the average cost when new was $666 and the average value now $442; that compliance with the act of 1911 would not add to the safety, or comfort, or health of the trainmen; that they have as much ventilation as a car required by the act; that the only difference from the present cars would be in the length, and the additional set of trucks, and the car would not be as

strong as are the cars at present constructed and in use, and that as now constructed they are stronger than the 60,000 pound capacity freight cars. There was no objection to, or contradiction, or rebuttal of this evidence.

We have stated the matter fully in order to present appellant's position fairly, and the question is, Does the evidence overcome the presumption, or, Is evidence admissible to controvert the presumption? It is the contention of appellant that the act is in violation of §8 of Art. 1 of the Federal Constitution, as a regulation of commerce "among the states." It is contènded by the State, that the act will be construed as applying only to operations in the State, and does not purport to be a regulation of interstate commerce, and the act, as a police power, which affects interstate commerce incidentally, is supreme until, and unless the particular subject is taken cognizance of by Congress, and that the character of caboose as to length and wheel base, has not been the subject of federal concern.

If the subject of the length and wheel base of caboose cars has been taken cognizance of, and the length and wheel base fixed, we are bound to recognize the sole jurisdiction of the subject as in Congress, even though the car is at the time engaged in intrastate traffic, but in conjunction with interstate traffic, or commerce. *Southern R. Co.* v. *Railroad Com., etc.* (1913), 179 Ind. 23, 100 N. E. 337, and cases cited.

The acts of Congress and the Interstate Commerce Commission have not embraced the specific subject, either of length of caboose cars, or their wheel bases, and we regard the act of the state as not an interference with, or as placing a burden upon, or as regulating interstate commerce, even though the right of control extends to all the instruments of such commerce (*Hall* v. *DeCuir* [1877], 95 U. S. 485, 497, 24 L. Ed. 547), for the reason that this act does not lay any restrictions on commerce itself, or the objects of commerce, or on an instru-

mentality of commerce by the manner of construction, or the manner of its use, but the act is directed at the form of the instrumentality, as to a matter, as to which Congress has not seen fit to act. We are unable to perceive how it might affect it even incidentally, and it is not such legislation as is superseded by the federal laws. *Pittsburgh, etc., R. Co.* v. *State* (1909), 172 Ind. 147, 166, 167, 87 N. E. 1034, and cases cited; *Pittsburgh, etc., R. Co.* v. *State* (1912), 178 Ind. 498, 99 N. E. 801; *Chicago, etc., R. Co.* v. *Arkansas* (1911), 219 U. S. 453, 465, 31 Sup. Ct. 275, 55 L. Ed. 290; *New York, etc., R. Co.* v. *New York* (1897), 165 U. S. 628, 632, 17 Sup. Ct. 418, 41 L. Ed. 853; *Smith* v. *Alabama* (1888), 124 U. S. 465, 480, 8 Sup. Ct. 564, 31 L. Ed. 508.

The serious question is the attack made upon the act as being in violation of the due process of law clause of the Federal and State Constitutions, on the ground of its being unreasonable and resulting in the destruction of a large amount of property, which would be in effect taken, and actually destroyed, without just reason, and without any good purpose to be subserved in the public interest, under the guise of being a police regulation. In answer to this the State contends that a police regulation is not a denial of due process of law. *Pittsburgh, etc., R. Co.* v. *State, supra; Pittsburgh, etc., R. Co.* v. *State, supra; Chicago, etc., R. Co.* v. *Arkansas, supra; New York, etc., R. Co.* v. *New York, supra.* Also that the State Constitution applies only to the taking of specific property by virtue of the right of eminent domain. *Hanly* v. *Sims* (1911), 175 Ind. 345, 93 N. E. 228, 94 N. E. 401; *State* v. *Richcreek* (1906), 167 Ind. 217, 223, 77 N. E. 1085, 5 L. R. A. (N. S.) 874, 119 Am. St. 491, 10 Ann. Cas. 899; *Levy* v. *State* (1903), 161 Ind. 251, 256, 68 N. E. 172; *Parks* v. *State* (1902), 159 Ind. 211, 220, 64 N. E. 862, 59 L. R. A. 190. The police power is of very wide scope, and the extent to which it may go, has not,

3.  and cannot be defined, and its application in a proper case is not inimical to the Federal Constitution, but

it must also be recognized that property, or property rights may not be destroyed, under the guise of the police power, or a so-called police regulation, unless it appears that it has, or can have no just relation to the protection of the public health, welfare, morals or safety. Unless this negation affirmatively appears by the act, or its history in enactment, the police power extends even to the taking and destruction of property, without being an infringement upon the due process of law clauses of either Constitution, even though compliance with the specific act shall require a large expenditure of money, and it will be presumed that the act is reasonable, unless the contrary appears from facts of which the courts will take notice. *State* v. *Barrett* (1909), 172 Ind. 169, 87 N. E. 7; *State* v. *Richcreek, supra,* and cases cited.

Regulation is the normal form of operation of the police power, and it operates on the relation which the property or rights affected, bear to the danger or evil which is to be provided against. The courts can have nothing to do with the wisdom, or expediency of legislative measures, or cost of compliance with them, as a rule; but if the legislature is the sole judge of the necessity of the measure it enacts, there can be no limitation on the so-called police power, and it is everywhere regarded under constitutional government, that a measure must not be unreasonable, and it is necessarily of the very essence of constitutional government and coördinated power. Freund, Police Power §§8, 15, 16, 17, 18, 20, 21; Tiedeman, Lim. of Police Power §§1, 4, 144. It may be a matter of degree, but it must not be unreasonable, for it is apparent that a measure may be unreasonable, from an excess of degree, and the question ordinarily is, whether the regulation becomes prohibitive, destructive, or confiscatory, or reasonably adapted to promote some public purpose, or some purpose in which the public is interested, or in which the lives, health, or safety of classes of the public are di-

rectly interested, or affects others indirectly, as for example, in respect to safety appliances. *Republic Iron, etc., Co.* v. *State* (1903), 160 Ind. 379, 66 N. E. 1005, 62 L. R. A. 136; *Union Bridge Co.* v. *United States* (1907), 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523; *Lawton* v. *Steele* (1894), 152 U. S. 133, 137, 14 Sup. Ct. 499, 38 L. Ed. 385; *Mugler* v. *Kansas* (1887), 123 U. S. 623, 8 Sup. Ct. 293, 31 L. Ed. 205; *Munn* v. *Illinois* (1876), 94 U. S. 113, 145, 24 L. Ed. 77.

Courts will not attempt fine distinctions with respect to the matter of reasonableness, or unreasonableness of a statute, and ordinarily it must be plain that no circumstances could justify an act before courts are authorized to interpose. *State* v. *Barrett, supra.* As here presented, this court is confronted squarely with the proposition whether it is conclusively bound by the presumption that there were reasons presented to the legislature as the basis for the act, as to which the court cannot be informed, as presented by the act itself, or whether evidence here adduced is admissible as tending to show that the act is arbitrary and unreasonable. The effect of such evidence is of course a collateral attack upon the legislative inquiry, judgment and declaration, that is, to impeach it, and we fully appreciate the gravity of the question. On the one hand we have the legislative determination, on the other the impeachment of that determination by the opinion of witnesses, which if admissible would seem to cover every phase of the case, as presenting an unreasonable and arbitrary exercise of legislative authority. What the evidence might be in another case under the same act, as showing good cause for the enactment, only demonstrates the inadmissibility of this evidence for any purpose. It would be a, dangerous rule to declare that the validity or invalidity of an act of the legislature can be the subject of collateral attack as to the facts upon which the legislature has acted; that is, that a jury may determine from evidence

adduced before it, or from lack of evidence, that an act is, or is not invalid, with as many varying conclusions as there might be bodies of triers, or upon such facts as ingenuity might suggest as matters of opinion, or actual facts in evidence. The question of the validity of a legislative act is necessarily one of law, and not of fact, and is not the subject of inquiry by triers of fact, and cannot be made to depend upon the testimony of witnesses, where the question is one within the competency of the legislature to enact, that is, within its power, and its validity cannot be contested or brought into review by inquiries of fact into extraneous matters, of which courts may not take judicial notice. *State* v. *Wheeler* (1909), 172 Ind. 578, 584, 89 N. E. 1, 19 Ann. Cas. 834, and cases cited; *Pittsburgh, etc., R. Co.* v. *Hartford City* (1908), 170 Ind. 674, 82 N. E. 787, 85 N. E. 362, 20 L. R. A. (N. S.) 461, and cases cited; *State* v. *Barrett, supra; Hovey* v. *State, ex rel.* (1889), 119 Ind. 395, 21 N. E. 21; *Hovey* v. *Foster* (1889), 118 Ind. 502, 21 N. E. 39; *City of Indianapolis* v. *Navin* (1898), 151 Ind. 139, 47 N. E. 525, 51 N. E. 80, 41 L. R. A. 337; *Mode* v. *Beasley* (1896), 143 Ind. 306, 42 N. E. 727; *Soon Hing* v. *Crowley* (1885), 113 U. S. 703, 5 Sup. Ct. 730, 28 L. Ed. 1145; *Lusher* v. *Scites* (1870), 4 W. Va. 11; *Stevenson* v. *Colgan* (1891), 91 Cal. 649, 25 Am. St. 230 and note, 14 L. R. A. 459 and note, 27 Pac. 1089; *DeCamp* v. *Eveland* (1854), 19 Barb. (N. Y.) 81; Cooley, Const. Lim. (7th ed.) 267 *et seq.;* Tiedeman, Lim. Police Power §73. If it cannot be made to appear that a law is in conflict with the Constitution, by argument deduced from the language of the law itself, or from matters of which a court can take judicial notice, then the act must stand. The testimony of expert, or other witnesses, is not admissible to show that in carrying out a law enacted by the legislature some provisions of the Constitution may possibly be violated. *People* v. *Durston* (1890), 119 N. Y. 569, 24 N. E. 6, 7 L. R. A. 715, 16 Am. St. 859, 864, and cases cited; *People* v. *Worden Grocer Co.* (1898),

118 Mich. 604, 77 N. W. 315; *People* v. *Elerding* (1912), 254 Ill. 579, 98 N. E. 982, 40 L. R. A. (N. S.) 893, 898; *Bonnett* v. *Vallier* (1908), 136 Wis. 193, 128 Am. St. 1061, 1068, 116 N. W. 885, 17 L. R. A. (N. S.) 486.

10. We certainly cannot know that a longer car with two adjustable and oscillating four-wheeled trucks, instead of four rigid wheels will not ride more comfortably, and probably more safely.

At least the court cannot say that it is unreasonable, but is bound to presume that there were facts before the legislature which would show it not to be unreasonable, and we hold that it cannot be the subject of attack, by oral evidence, as unreasonable, and arbitrary, and confiscatory, as is sought in this case.

We do not place this conclusion on any ground of abstract justice, or judicial notions of natural right, or equity, but upon the ground that the act cannot be attacked by oral evidence as to its unreasonableness, or the cost, or expense, or the hardship which may result from compliance, for the reason that the question is one of power in the legislature as a police regulation, with which courts may not interfere, unless they can say that it is not within the power, or that they judicially know that there could be no reason, or reasons for the act.

11. It is next urged that the act is invalid because its going into effect is made to depend upon some other authority than is provided in the Constitution, in violation of article 1, §25, and in violation of §26, article 1, as authorizing the suspension of laws without the authority of the General Assembly, and invalid under articles 3 and 4 of the Constitution, as delegating legislative powers to the Railroad Commission under §§5, 7 of the act. Appellant is not prosecuted here for the violation of any order of the Railroad Commission, the taking effect, or suspension, enforcement, or validity of which, might be involved under §§25 or 26 of article 1, but for the violation of §§2 and 3,

of the act, which are not involved with §§5 and 7, and are entirely independent, and if the latter are invalid, as to which we express no opinion, the valid and the invalid sections are independent and readily separable, and appellant cannot complain of an act which if invalid is not in question and does not affect it. *Hammer* v. *State* (1909), 173 Ind. 199, 204, 89 N. E. 850, 24 L. R. A. (N. S.) 795, 140 Am. St. 248, 21 Ann. Cas. 1034.

The judgment is affirmed.

Note.—Reported in 102 N. E. 25. See, also, under (1) 7 Cyc. 420, 422; (2) 7 Cyc. 422; 33 Cyc. 648; (3, 7) 8 Cyc. 864; (4, 8) 8 Cyc. 801; (5) 8 Cyc. 862; (6) 36 Cyc. 971; (9) 36 Cyc. 971, 974; (10) 8 Cyc. 801; 36 Cyc. 974; (11) 36 Cyc. 976; (12) 36 Cyc. 984. As to protection of corporations from special and hostile legislation, see 62 Am. St. 165. As to equal protection of laws, see 25 Am. St. 873. For a discussion of the state regulation of railroads as an interference with interstate commerce, see 7 Ann. Cas. 5; 13 Ann. Cas. 147. On the question of the right of a state to require railroad company to equip its road, see 13 L. R. A. (N. S.) 320.

[No. 21,527. Filed June 24, 1913. Rehearing denied October 15, 1913.]