SCOTT v. INDIANA BOARD OF AGRICULTURE.

[No. 24,114. Filed June 30, 1922. Mandate modified July 12, 1922.]

1. STATES.—Assuming Debts of Corporation.—Issuance of Bonds to Pay Debts.—Tax Levy to Provide for Payment of Bonds.—Validity.—Constitutional Provisions.—Section 10 of Acts 1921 (Acts 1921 p. 166), providing for the levy of a tax to provide a sinking fund for the payment of bonds issued by the state to reimburse it for the indebtedness of the Indiana board of agriculture upon the conveyance to the state of the state fair grounds by a corporation, as authorized by the provisions of the act, held to violate Art. 10, §§5, 6, of the Constitution, prohibiting the enactment of any law authorizing a debt to be contracted in behalf of the state, except for certain specified purposes, and providing that the general assembly shall never, on behalf of the state, assume the debts of any corporation. p. 323.

2. STATES.—Assumption of Debts of Corporation.—Issuance of Bonds to Pay Debts.—Statute.—Validity.—Section 5 of Acts 1921 (Acts 1921 p. 166), requiring the state to assume the indebtedness of the Indiana board of agriculture, and §9 of the act, providing for the creation of a debt which would be an obligation of the state by issuing the bonds therein mentioned, held unconstitutional in part. p. 329.

3. STATUTES.—Invalidity of Part of Statute.—Validity of Remainder.—In an action to enjoin the execution of bonds, which it was alleged were about to be issued on behalf of the State of Indiana under Acts 1921 p. 166, and to enjoin the auditor of Marion county from levying a tax to pay the interest and provide a sinking fund for the payment of such bonds, if issued, held that, with §10 of the act, which is held void, and the parts of §§5 and 9 which are held invalid, eliminated, the remaining sections of the act, together with the portions of §§5 and 9 which are not stricken out as invalid and void, are constitutional and valid. p. 329.

From Marion Superior Court (A15,587) ; Arthur R. Robinson, Judge.

Action by Robert C. Scott against the Indiana Board of Agriculture and others. From a judgment for defendants, the plaintiff appeals. Reversed.

Robbins, Weyl & Jewett, for appellant.

U. S. Lesh, Attorney-General, and James W. Noel, for appellees.

WILLOUGHBY, J.—The appellant brought this suit against the Indiana board of agriculture, the several persons comprising the membership of the said board, as named in the title of the action, and Leo K. Fesler, as auditor of Marion county, for the purpose of enjoining the execution of bonds, which it is alleged appellees were proposing to issue on behalf of the State of Indiana, and to enjoin the auditor of Marion county from levying a tax to pay the interest and provide a sinking fund for the payment on the principle of any such bonds if issued.

The trial court made a special finding of facts and stated its conclusions of law to each of which appellant excepted and assigned as error, each of such conclusions of law. The special finding of facts was in substance as follows:

No. 1. That the plaintiff is a citizen of the United States and resides in Marion county, State of Indiana, and that he owns property situated in said county and state which is subject to taxation under the laws of the state, and that he is a taxpayer in said county and state; that he brings this action for and on his own behalf as such taxpayer and for and on behalf of all the other taxpayers of Marion county in said state.

No. 2. The defendant, Indiana board of agriculture, is an official board or body created by an act of the general assembly of said state approved March 3, 1921, and appearing in the Acts 1921 p. 166; that the defendants, Warren T. McCray, and J. H. Skinner, are *ex-officio* members of said board by virtue of their respective official positions as Governor of said state and dean of agriculture of Purdue University; and that the remaining defendants are members of said Indiana board of agriculture by virtue of having been duly nominated and appointed as such pursuant to the provisions of §2 in the aforesaid act; that the defendant, Leo K. Fesler,

is the duly qualified and acting auditor of Marion county, charged with certain duties with respect to the preparation of tax duplicates and the assessment of taxes.

No. 3. The court further finds that heretofore in the month of February, 1851, the general assembly of the State of Indiana under the title of "An Act for the Encouragement of Agriculture" which said act was approved February 14, 1851, granted unto Joseph A. Wright, of Marion county and others, a charter as a body corporate under the name and style of the Indiana State Board of Agriculture, and provided in said special charter for annual meetings of said Indiana state board of agriculture, together with the presidents of county agricultural societies, or delegates therefrom, who should be for the time being *ex officio* officers of said state board of agriculture, "for the purpose of deliberation and consultation as to the wants, prospects and conditions of the agricultural interests throughout the State," and to make annual reports with respect thereto to the general assembly of the state, embracing the proceedings for each year, and an abstract of the proceedings of the several county agricultural societies, as well as a general view of the conditions of agriculture throughout the state, accompanied by such recommendations as they might deem interesting and useful; and in said special charter it was further provided that said Indiana state board of agriculture should have the power to hold state fairs and have entire control of the same, should fix the amount of various premiums offered, and in such exhibitions might embrace every branch of science and art or such portions of them as they might deem expedient and proper, calculated to advance the interests of the people of the state. That at all times from and after February 14, 1851, until the month of March, 1921, said Indiana state board of

agriculture continued to exist as a private corporation devoted to and engaged in the performance of the public duties and in carrying out the public purposes stated in its charter, looking to the encouragement of agriculture and its kindred pursuits and devoted its property and activities solely to such public uses, and did hold and conduct annual agricultural exhibitions known as state fairs at or near the city of Indianapolis, Marion county, State of Indiana, and from time to time has been supported by and received appropriations from the State of Indiana for the promotion, support and maintenance of said public uses and purposes; and on March 3, 1921, said Indiana state board of agriculture was a private corporation then engaged in the business of encouraging the science of agriculture and its kindred pursuits by the aforesaid means and according to the terms and conditions of its said charter.

No. 4.  That on said March 3, 1921, said Indiana State Board of Agriculture, a private corporation organized as aforesaid, had acquired and was the owner of valuable real estate known as the Indiana State Fair Grounds, situated in Marion county, State of Indiana, containing 214 acres more or less, and a large amount of personal property and property rights, much of which was connected with and consisted of equipment for the business of conducting annual exhibitions known as state fairs; that said property then was and theretofore at all times since the acquisition thereof, had been used by said Indiana State Board of Agriculture in carrying out the objects and purposes stated and contained in its said charter, and that said property and all of the same then was and theretofore at all times had been devoted to public uses and purposes, although owned and operated by said private corporation.  That on said March 3, 1921, said real estate was encumbered by a mortgage indebtedness of approximately $80,000 and was fur-

ther encumbered by large assessments for public improvements which remained unpaid, and that said Indiana State Board of Agriculture, by reason of its operations and by reason of said public uses, was further indebted in the amount of over $300,000, much of which was past due and which it had no ability to pay excepting by the sale and sacrifice of certain of said property, which would necessarily result in the impairment and partial destruction of the public use of said property.

No. 5. That after the passage and approval of the act of the legislature, approved March 3, 1921, contained in Chap. 77 of the Acts of 1921, (Acts 1921 p. 166) said Indiana State Board of Agriculture, pursuant to the terms and conditions of said act, proceeded by duly adopted resolutions of said board, and did authorize the conveyance to the State of Indiana of all of said real estate and personal property belonging to said Indiana State Board of Agriculture for the uses and purposes for which said property had been theretofore held and used, with the right in said State of Indiana to sell and dispose of the same and apply the proceeds derived therefrom to the uses and purposes for which said property had been held and used by the said Indiana state board of agriculture, subject to said mortgage on said real estate approximating $80,000, upon the condition that said deed of conveyance be delivered to the Governor of Indiana concurrent with the payment by said State of Indiana of all indebtedness of said board of agriculture and all charges upon said property excepting said mortgage indebtedness, subject to which said property should be taken. That, thereafter, pursuant to the authority so granted said Indiana State Board of Agriculture on May 31, 1921, executed and delivered to the Governor of said state a warranty deed of conveyance and bill of sale for said state fair grounds. Said deed contains the following recitals: "This conveyance is

made, however, subject to a certain mortgage upon said real estate dated December 2, 1912, to Meyer-Kiser Bank, Trustee, which mortgage was duly recorded in the office of the recorder of Marion county, Indiana, on December 18, 1912, and appears in Mortgage Record 605, at page 142 in the said recorder's office, which mortgage, by the acceptance of this deed, the grantee assumes and agrees to pay.

"The said real estate is also conveyed subject to any and all improvements assessments, which assessments the grantee also assumes and agrees to pay.

"For the same considerations herein mentioned, the said Indiana State Board of Agriculture also transfers and delivers to the State of Indiana all other property owned by said Indiana State Board of Agriculture, real, personal, or mixed and wherever situated.

"This conveyance of real estate and transfer of other property is made pursuant to an act of the General Assembly of the State of Indiana entitled: 'An Act to establish a board of agriculture of the State of Indiana, defining its powers and duties, and authorizing and empowering the governor, on behalf of the State of Indiana, to take from the Indiana state board of agriculture title to the property belonging to it providing for revenues for said board, and declaring an emergency, and providing for the sale of bonds.'

"Approved by the governor on March 3, 1921, and particularly pursuant to section 5 of said act; and this conveyance of real estate and transfer of personal property is made upon the condition that the grantee named in this conveyance assumes the payment of all debts of every kind of Indiana State Board of Agriculture; and this conveyance of real estate and transfer of other property is made upon the further condition that the property, real and personal herein described, is to be held by the State in trust for the uses and purposes for which

such property has been heretofore held and used by Indiana State Board of Agriculture.  The State of Indiana, however, shall have the right to sell and dispose of the same whenever deemed wise but must apply the proceeds derived therefrom to the uses and purposes for which the said property has been held and used by the Indiana State Board of Agriculture."

Said finding also states that the Governor of Indiana on the behalf of the State of Indiana received and accepted said conveyance and bill of sale and accepted said trust imposed thereby.

No. 6.   The court further finds that at the time of the conveyance set out in finding No. 5, said Indiana State Board of Agriculture contemplated dissolution as a corporation, and that by said conveyance said Indiana State Board of Agriculture transferred and alienated all of its property and assets of every character and description whatsoever, and then and thereafter possessed no property or assets of any value, and after the execution and delivery of said conveyance did cause itself to be and was thereafter, on June 13, 1921, dissolved, and its affairs completely wound up and final certificate thereof filed in the office of the secretary of the State of Indiana under date of December 12, 1921.   That by reason of said dissolution all of the unsecured indebtedness of said Indiana State Board of Agriculture, aggregating more than $300,000 became, and in view of said proposed dissolution contemplated at the time of said transfer, was about to become an equitable lien and a charge upon and against all of said property real and personal so conveyed and transferred to the State of Indiana as trustee, and that concurrently with the delivery of said deed and in view of the character of said indebtedness of said Indiana State Board of Agriculture as an equitable lien and charge against said property, the same was paid by the State of Indiana under and

pursuant to and out of the appropriation made therefor by the general assembly in said act of March 3, 1921. That subsequent to the approval of said act of March 3, 1921, said Indiana State Board of Agriculture therein created, was duly selected and organized, and its membership then consisted and now consists of all of the defendants in the above entitled cause excepting the said Leo K. Fesler, auditor; and that after the delivery of said deed of conveyance, and transfer said Indiana board of agriculture, consisting of said defendants other than said Fesler, did take over as agents of the state the control and management of said real estate and personal property so conveyed to the state as trustee therefor and the State of Indiana ever since has held and now holds said property in trust for the uses and purposes for which said property has been theretofore held and used by said grantor, the Indiana State Board of Agriculture, and with the intent on the part of said Indiana board of agriculture to enlarge the scope and field of its activities from time to time as it may deem to the advantage of agriculture and its kindred pursuits; that said State of Indiana and said Indiana board of agriculture have no interest in said property and hold said property for no purpose other than as trustees for said designated purposes and for the use of such of the people, citizens and taxpayers of the State of Indiana as are interested in the science of agriculture and its kindred pursuits, and desire to profit by such use of said property and the activities of said Indiana board of agriculture in connection therewith, including its exhibitions, state fairs, reports and other means employed by it in the promotion of said uses and purposes.

No. 7. The court further finds that in the taking of said property the state became pledged to carry on the activities and to continue the public uses and purposes for which said property had been used by the Indiana

State Board of Agriculture and that the Indiana board of agriculture decided and undertook to extend the scope and usefulness of such activities, and that in order to properly equip the grounds and premises for conducting said business to the best advantage and best effectuate its public use and public purpose, said board decided that it had become necessary to improve and repair certain buildings and to erect new structures on said real estate; that thereupon and thereafter namely, on January 15, 1921, said Indiana board of agriculture with the consent of the Governor of the State of Indiana, adopted resolutions providing for the borrowing of money in the sum of $1,000,000 and through its officers has taken and is taking steps and proceedings to borrow said money by the execution of and sale of an issue of mortgage bonds in the amount of $1,000,000 to be issued as serial bonds; $100,000 to mature ten years from the date thereof and $100,000 each year thereafter until paid, and to bear interest at the rate of five per cent. per annum; and proposed and do now propose that said issue of mortgage bonds shall be executed and delivered; and that the payment thereof shall be secured by a first mortgage on said real estate and personal property so conveyed to the State of Indiana as trustee and now being administered by said State of Indiana through said board of agriculture for the carrying out of said public uses and purposes; the said defendants, other than said Fesler, proposed and now propose that the proceeds of said bonds when sold be applied to pay the present outstanding mortgage, and said assessments for public improvements which are liens on said real estate, and to repay to the said State of Indiana the said amount of more than $300,000 paid by the state from, through and by said appropriation contained in said act of March 3, 1921, and which was paid by the state at the time of the conveyance and transfer of said

property to the said State of Indiana; and further proposes from the proceeds of said bonds to improve and repair certain buildings and to erect new buildings on said real estate for said public uses and purposes hereinbefore set out; and said defendants other than said Fesler have received an offer for the purchase of said issue of bonds which they deem it proper to accept and are about to accept and are threatening to sell said issue in the aggregate amount of $1,000,000, with the consent of the defendant, Warren T. McCray, Governor of said state.

No. 8. The court further finds that it is not the plan or purpose of the defendants to issue bonds or contract indebtedness on behalf of the state as primary or direct obligations of the state, but it is their plan and purpose to cause such bonds to be issued by the state only in its capacity as trustee for said property in which capacity said trustee is charged with carrying out the activities necessary to the accomplishment of said public purpose and to use said property and all of the same and all of the proceeds of said bonds for the specific public uses and purposes for which said property has been heretofore held and used by said Indiana State Board of Agriculture; and that such bonds are to be secured by mortgage upon said property used for said purpose; that said property to be secured by such mortgage is of the value of more than $2,000,000 and is good and sufficient security for the payment of said mortgage bonds.

No. 9. The court finds further that said defendant, Leo K. Fesler, auditor of Marion county, proposes and threatens that in case of the issue and sale of said proposed bonds aforesaid, that he will extend upon the tax duplicates for the year 1923 for the taxes payable in 1924, the said rate of one-fourth of one cent on

each $100 upon all of the taxable property in Marion County as provided by said §10 of said act, and that he will compute and extend on the assessor's valuation of property of said county, as equalized by the county board of review and the state board of tax commissioners, taxes upon the property of this plaintiff and all other taxpayers of Marion county so computed; and that he will, between the first Monday in July and the last day in December, 1923, make out a roll of taxes assessed in said Marion county against the property of plaintiff, and all of the taxpayers of Marion county, known as the tax duplicate, and threatens therein to charge and extend as against plaintiff and all of the taxpayers of Marion county, such amounts of taxes so computed at the rate of one-fourth of one cent on each $100 of such taxable property; and threatens thereafter to transmit said tax duplicate to the treasurer of Marion county on or before December 31, 1923, in order that the treasurer may collect said taxes from defendant and all of the taxpayers in Marion county in the manner in which other taxes are collected according to law by said county treasurer.

Upon the foregoing facts the court states conclusions of law as follows:

First:    The proposed issue of bonds is not to be the direct obligation of the state binding all of the property of the state but said bonds are to be issued by the state, through said board in the capacity of a trustee of an express trust, the payment thereof to be secured by a mortgage upon the trust property and by the collection of a special tax for said purpose provided by §10 of the acts of 1921, (Acts 1921 p. 166) and which said tax is levied in support of a proper function of the state government which may be administered through a trustee or through such agent as the state may select.

Second: The State of Indiana in its sovereign capacity is the proper trustee of such express trust, and with the authority of the legislature may borrow money and execute bonds and a mortgage to secure the same for the support of such a trust devoted to the public use to the same extent as if the trustee were an individual or a private corporation.

Third: The property held by the state in the trust capacity is used for a public purpose and devoted to a public use, and the state may levy taxes for the support thereof.

Fourth: The trust estate of which the state is trustee in its sovereign capacity is used for a public purpose and is devoted to a public use, falling within one of the functions of the state government as defined by the Constitution of Indiana, and the state may levy taxes for the support thereof.

Fifth: The levy of taxes made under such §10 of the Act of March 3, 1921, which the auditor proposes carrying on to the tax duplicates is pledged by the state to meet and provide for the payment of the bonds and it is mandatory upon and the imperative duty of the auditor of Marion county to carry and extend the same into the tax duplicate for 1923, and for succeeding years until the entire amount of such bonds and interest thereon is paid, and to make said tax a charge upon the property of plaintiff and every taxpayer of Marion county at the rate provided by law, and as assessed for the purposes of taxation.

Sixth: The proposed issue of bonds and levy of taxes are valid and do not violate any provision of the Constitution of Indiana.

Seventh: The plaintiff is not entitled to the injunction prayed for either on his own behalf or in his representative capacity for other taxpayers of Marion county.

Eighth: Defendants are entitled to recover their costs.

The sole question presented by this appeal is the constitutionality of chap. 77, acts 1921, Acts 1921 p. 166.

It is the contention of the appellant that the provisions of the act of March 3, 1921, Acts 1921 p. 166, creating a new board of agriculture, and whereby

1. it is sought in §5 to authorize and empower the Governor, on behalf of the State of Indiana, to take from the Indiana State Board of Agriculture, a deed of conveyance to and in the name of the State of Indiana for the real estate and property belonging to said board, subject to any valid outstanding mortgage, or other liens, or other obligations of said Indiana State Board of Agriculture, and on condition that the State of Indiana, as grantee named in such conveyance, assume the payment of all such mortgage and other liens and obligations, and the taking of such deed by the state on said terms and conditions; and that the provisions of the act, (Acts 1921 p. 166) §9, whereby it is sought to authorize an issue of bonds, secured by mortgage on said property so conveyed, to an amount not exceeding $1,000,000, for the purpose of securing funds with which to pay and liquidate all debts and obligations of any and every kind outstanding against the said Indiana State Board of Agriculture at the time of such deed of conveyance, and the action proposed to be taken thereunder by the issue and sale of such securities for the purpose aforesaid, and that the proposed tax levy, as provided by §10 of said act, Acts 1921 p. 166, in order to create a fund with which to meet and pay such bond obligations are each and all in violation of the provisions of the Constitution of the State of Indiana, and unauthorized by law and void, in the respects and for the reasons following: It is sought thereby to create an indebtedness of the State of Indiana, in violation of the

provisions of §5 of Art. 10 of the Constitution of the state, which is as follows:

5.  "No law shall authorize any debt to be contracted on behalf of the state, except in the following cases: To meet casual deficits in the revenue; to pay the interest on the state debt; to repel invasion; suppress insurrection, or, if hostilities be threatened, provide for the public defense."

This provision of the Constitution prohibited the legislature from passing any law authorizing any debt to be incurred or made by the state or on behalf of the state except as therein provided.   It cannot be contended that the debt sought to be authorized by this act would come within any of the exceptions contained in such section of the Constitution.

By the provisions of the act of March 3, 1921, and action thereunder, it is sought to have the state assume and agree to pay, and to pay and liquidate the indebtedness and obligations of the Indiana State Board of Agriculture in violation of the provisions of Art. 10, §6, of the Constitution of the state, which provides "nor shall the general assembly ever, on behalf of the state, assume the debts * * * of any corporation whatever."

The Indiana state board of agriculture, the property of which was authorized, by the act of March 3, 1921, to be conveyed to the State of Indiana, and the indebtedness of which it was provided, by the provisions of said act, should be assumed and paid by the state, was held to be a private corporation, the property of which was held in the right of private ownership, and that the corporation could not be abolished by a statute of the state, enacted for that purpose.   *Downing* v. *Indiana State Board, etc.* (1891), 129 Ind. 443, 28 N. E. 123, 28 N. E. 614, 12 L. R. A. 664.

The appellees contend that while the State of Indi-

ana, by the conveyance provided for in said statute, took a fee simple title to the real estate belonging to the Indiana State Board of Agriculture and a good legal title to all other property and property rights of whatsoever kind and wherever situated belonging to said board at the time of such transfer it only took it in trust for the uses as provided in the act.

They further contend that "the trust created by this statute is express and clear, although the term 'trust' is not used." They then refer to what they term an apt provision in the deed as follows:

"This conveyance of real estate and transfer of other property is made upon the further condition that the property real and personal, herein described, is to be held by the State in trust for the uses and purposes for which such property has heretofore been held and used by the Indiana State Board of Agriculture."

The argument is not convincing. The power to convey is found in the statute and cannot be limited or extended by any provision in the conveyance.

The statute however, contains the following provision: "Provided, however, that such conveyance and transfer of property shall be made and accepted subject to any valid outstanding mortgage or other liens or other obligations of said Indiana State Board of Agriculture, and on condition that the said grantee named in such conveyance assume the payment thereof, and that such property is to be held by the state for the uses and purposes for which such property has been heretofore held and used by the Indiana State Board of Agriculture, the state reserving the right, however, to sell and dispose of the same and apply the proceeds derived therefrom to the purpose for which such property has been held and used by said Indiana State Board of Agriculture." Acts 1921 p. 166, §5.

The statute does not purport to create a trust. It

provides for the conveyance upon two conditions: First, that the state shall assume the payment of any valid outstanding mortgage or other liens or other obligations of said Indiana State Board of Agriculture and, second, that such property is to be held by the state for the uses and purposes for which such property has been heretofore held and used by the Indiana State Board of Agriculture. The second condition was probably a condition necessary to be attached to such conveyance by the charter of the Indiana State Board of Agriculture.

In *Downing* v. *Indiana State Board, etc., supra,* the court says in speaking of the board: "The trustees so elected have no financial interest in the property of the corporation, that is to say, they are not the owners of the property of the corporation in such a sense as that they can sell it and appropriate the proceeds to their own use any more than could the trustees of the State university sell and convert the proceeds of the property to their own use; they are simply trustees to manage and control it. The institution, the corporation, exists for the benefit of the people of the State, and the law would not allow its purpose to fail by a failure of those charged with the duty of electing the successor, but neither the State, by its General Assembly, nor the trustees of the corporation, have any right to appropriate the property of the corporation to the use of the State or the individual members of the board."

When the Indiana State Board of Agriculture made the conveyance, as set forth in the finding of facts, if it was valid to convey anything, it conveyed the fee simple title to the property therein described to the State of Indiana and the Indiana board of agriculture, attempted to be created by the act was a governmental agency providing for the management and control of said property and their management and control of the property was the management and control of it by the state.

The provisions or conditions contained in §5 of the act, Acts 1921 p. 166, required the State of Indiana to assume the indebtedness of the said Indiana State Board of Agriculture and §9 of the act, *supra,* provided for the creation of a debt which would be a debt of the State of Indiana by issuing the bonds therein mentioned.

The language in the act of March 3, 1921, Acts 1921 p. 166, is plain and leaves no room for construction. It is not within the province of the court to add to or take from the language used by the general assembly when the language so used was clear and unambiguous. This principle is declared by Sutherland in his works on statutory constructions.

"The legislature must be understood to mean what it has plainly expressed, and this excludes construction. The legislative intent being plainly expressed, so that the act read by itself, or in connection with other statutes pertaining to the same subject, is clear, certain and unambiguous, the courts have only the simple and obvious duty to enforce the law according to its terms." 2 Lewis, Sutherland Statutory Constructions §366, p. 701. *Case* v. *Wildridge* (1853), 4 Ind. 51; *Stout* v. *Board, etc.* (1886), 107 Ind. 343, 8 N. E. 222; *United States* v. *Goldenberg* (1897), 168 U. S. 95, 18 Sup. Ct. 3, 42 L. Ed. 394.

Section 10 of the act provides that: "In order to create a fund with which to pay premiums and to meet the interest obligations or any outstanding bonds or other evidences of the indebtedness issued or assumed by said board as well as to provide a contingent sinking fund for the payment of any such obligations, there is hereby levied an annual tax of one-fourth of one cent on each one hundred dollars upon all the taxable property in the State of Indiana, beginning with the year 1923 to be payable in 1924, and extending annually thereafter until said bond obligations shall have been

liquidated, or other provision shall have been made therefor, as hereinafter defined."

The purpose for which the tax is to be levied and used is certain and definite. But the obligations to be so met and paid are unlawful, and a tax to pay them is unauthorized and void. The conclusion is that §§5, 9 and 10 of this act (Acts 1921 p. 166) are unconstitutional and void.

It is further contended that these sections being unconstitutional they make the whole act unconstitutional.

In 1 Lewis, Sutherland Statutory Constructions (2d ed.) §296, it is said: "Where a part only of a statute is unconstitutional, and therefore void, the remainder may still have effect under certain conditions. The court is not warranted in declaring the whole statute void unless all the provisions are connected in subject-matter, depend on each other, were designed to operate for the same purpose, or are otherwise so dependent in meaning that it cannot be presumed that the legislature would have passed one without the other. The constitutional and unconstitutional provisions may even be expressed in the same section, or even in the same sentence, and yet be perfectly distinct and separable so that the first may stand though the last fall. The point or test is not whether they are contained in the same section, for the distribution into sections is purely artificial, but whether they are essentially and inseparably connected in substance."

On the other hand it is equally well settled that "where a part of a statute is unconstitutional, if such part is so connected with the other part that they mutually depend upon each other as conditions, considerations, or compensations for each other, so as to warrant the belief that the legislature intended them as a whole, and if they could not be carried into effect the legislature would not have passed the residue independ-

ently of that which is void, then the whole act must fall." *Caldwell* v. *State, ex rel.* (1918), 187 Ind. 617, 119 N. E. 999; *State* v. *Blend* (1890), 121 Ind. 514, 23 N. E. 511, 16 Am. St. 411; *State, ex rel.* v. *Fox* (1902), 158 Ind. 126, 63 N. E. 19, 56 L. R. A. 893.

Eliminating §§5, 9 and 10, *supra,* the remaining sections are meaningless. The whole act is therefore void.

Judgment reversed with instructions to the trial court to restate the conclusions of law in conformity with this opinion and enter judgment accordingly.

Townsend, J., concurs.

Travis, J., concurs in reversing the case.

Myers, J., dissents as to all except as to the holding covering §10, with opinion.

Ewbank, J., dissents with opinion.

PER CURIAM.—The mandate heretofore ordered is modified to read as follows:

It is therefore, on the several opinions filed, ordered. Myers, C. J., and Travis, J., concurring with Willoughby and Townsend, JJ.:

(1) That the judgment below be reversed with instructions to the trial court to restate its conclusions of law, in that plaintiff (appellant) is entitled to an injunction forbidding defendants (appellees) (a) from levying the taxes in question as well as forbidding the issue of bonds and the execution of the mortgage in anywise, either primarily or secondarily, as the individual debt or obligation of the state; (b) that §10, Acts 1921 p. 166, be declared unconstitutional and void; (c) Travis, J., concurring with Willoughby and Townsend, JJ., that the statute in question does not authorize the issue of bonds or the execution of a mortgage.

(2) Travis, J., concurring with Townsend and Willoughby, JJ., that all of §9 of the act, *supra,* preceding the proviso therein, and the following portions of the proviso, namely, to wit: "or the pay-

ment of which may have been assumed by the Indiana board of agriculture as hereinbefore provided for (,) which appropriation is contingent upon the need of funds for said purpose before the bonds or other obligations herein authorized to be issued as aforesaid shall have been so issued. * * * and upon the sale of said bonds or other obligations a sufficient amount of the funds derived therefrom shall immediately be paid into the state treasury for the purpose of reimbursing the treasury for all moneys thus advanced for such payments or the liquidation of said obligations," are unconstitutional and void and should be stricken down.

It is further ordered, Myers, C. J., Ewbank and Travis, JJ., concurring:

(3) That the conclusions of law be further restated; (a) that with the clause "and on condition that the said grantee named in such conveyance assume the payment thereof" found in §5 stricken out as invalid and void; (b) that with §10, *supra,* and the clause herein noted as part of §5, and the clauses and parts of §9 in this mandate specifically mentioned, eliminated, the remaining sections and portions of §§5 and 9 of Chapter 77 of an act of the legislature approved March 3, 1921, Acts 1921 p. 166, are constitutional and valid.

So ordered.

Myers, C. J., Ewbank and Travis, JJ., concurring.

Willoughby and Townsend, JJ., dissenting.

## DISSENTING OPINION.

EWBANK, J.—Appellant sued as a taxpayer, on behalf of all the taxpayers of the state, to enjoin the execution by the appellee board, and the individuals who compose it, including the Governor of the state as an *ex-officio* member, of certain bonds and a mortgage on the "State Fair Grounds" at Indianapolis, to secure them, and against the auditor of Marion county, Indiana, to enjoin

him from levying a tax to pay the interest and provide a sinking fund for payment of the principal of any such bonds, if issued. The trial court made a special finding of facts and stated its conclusions of law, to each of which appellant excepted, and has assigned as error each of such conclusions of law. The special finding recited, in substance, that appellant was a taxpayer, and that the appellee board was created by Acts 1921 p. 166-174, and was organized under the terms of that act; that the Indiana State Board of Agriculture, a private corporation, had previously owned property, including said "State Fair Grounds," which had been used by it for the purpose of conducting an annual agricultural exhibit commonly known as the "State Fair;" that after the passage of said act, on May 31, 1921, said Indiana State Board of Agriculture conveyed and warranted to the State of Indiana all of its property, including the "State Fair Grounds," by a deed which recited that it was executed pursuant to said act, that the consideration was $1 and the assumption by the state of all the grantor's indebtedness, that the conveyance was subject to a certain mortgage on the land which, by the acceptance of the deed, the grantee assumed and agreed to pay, and that: "This conveyance of real estate and transfer of other property is made upon the further condition that the property, real and personal, herein described, is to be held by the State in trust for the uses and purposes for which such property has been heretofore held and used by Indiana State Board of Agriculture (the grantor). The State of Indiana, however, shall have the right to sell and dispose of the same whenever deemed wise, but must apply the proceeds derived therefrom to the uses and purposes for which the said property has been held and used by the Indiana State Board of Agriculture." That said property so conveyed to the state is of the value of more than

$2,000,000; that thereupon all the debts of said Indiana State Board of Agriculture were paid by the state out of an appropriation made by the general assembly for that purpose; that the appellee board had resolved to borrow $1,000,000, to be evidenced by bonds secured by a mortgage on said property, to reimburse the state for payment of said debts and to make improvements thereon for use in holding "State Fairs;" that a bid for such bonds, duly received, had been accepted, and that if not enjoined the appellee board intended to and would execute and issue such bonds and a mortgage on said property securing them, and the appellee auditor of Marion county, Indiana, would extend upon the tax duplicates for the year 1923 a tax (payable in 1924), as provided by said act, and transmit it to the county treasurer for collection. But the finding further recited that under said deed the State of Indiana took and holds title to said property only as trustee, and holds it in trust for the uses and purposes for which its said grantor held it, and that the only interest which the State of Indiana or the appellee board has therein is as trustee thereof for the use of such of the people, citizens and taxpayers of Indiana, as are interested in the science of agriculture and kindred pursuits, and desire to profit by the activities of the appellee board in connection therewith; and that the proposed issue of mortgage bonds will be merely the bonds of the trustee, secured by a mortgage on the property so held in trust by it, and that the proceeds from the sale of the bonds were intended to be used only in paying debts which are now liens against said property and debts of the grantor at the time it was deeded to the state, which were proper charges against the property and have been paid by the state as such charges, and in making improvements on such property, the better to fit it for use in carrying out the purposes of the trust. Conclusions

of law were stated to the effect that the plaintiff (appellant) should recover nothing.

Appellant's exceptions to the several conclusions of law are based wholly upon the proposition that Acts 1921 p. 166, is unconstitutional. That act creates and establishes the Indiana board of agriculture (an appellee), to consist of sixteen members, in addition to whom the Governor of the state and the dean of agriculture of Purdue University are *ex-officio* members with power to vote on all questions except the choice of new members representing the respective congressional districts. The original members were all appointed by the governor, said act designating who they should be. Of their successors at the expiration of their respective terms, one from each congressional district has been or is to be chosen for stated terms by the annual conference of officers of the different associations of breeders of domestic animals, poultry and bees, and societies for the promotion of farming, horticulture, corn growing, cattle feeding and kindred purposes, organized or to be organized in the State of Indiana; the others, except said *ex-officio* members, shall be appointed by the Governor, who may also fill by appointment the unexpired term of any member who may die or resign before the date of the regular meeting at which his successor is to be chosen. This board shall elect officers, employ assistants, manage the "State Fair Grounds" at Indianapolis, hold state fairs at times and places fixed by it, fix and pay premiums for exhibits, purchase additional equipment and material, erect buildings or make improvements thereon, and exercise entire control over the grounds, the property, and the state fair, subject only to law. It shall have offices in the state house, and is expressly authorized by the language of the act to issue the bonds in question, and to secure them by a mortgage on the state fair grounds property, acting by

and with the advice and consent of the. Governor, which bonds and mortgage are declared by the act to be exempt from taxation. The board is required annually to file with the Governor of the state a report of its receipts and expenditures, with a summary of its activities and work done. Sections 5 and 10, Acts 1921 p. 166, provide (in part) as follows:

"Sec. 5. The Governor on behalf of the State of Indiana is hereby authorized and empowered to take from the Indiana State Board of Agriculture, and said board is hereby authorized to execute and deliver to the Governor a deed of conveyance and bill of sale, which conveyance and bill of sale shall place in the name of the State of Indiana a fee simple title to the real estate belonging to said board, known as the Indiana state fair grounds  *  *  *  and a good legal title to all other property and rights of whatsoever kind and wherever situated, which may at the time of such transfer be the property of the Indiana State Board of Agriculture; Provided, however, that such conveyance and transfer of property shall be made and accepted subject to any valid outstanding mortgage or other liens or obligations of said Indiana State Board of Agriculture, and on condition that the said grantee named in such conveyance assume the payment thereof, and that *such property is to be held by the state for the uses and purposes for which such property has been heretofore held and used* by the Indiana State Board of Agriculture, the state reserving the right, however, *to sell and dispose of the same and apply the proceeds derived therefrom to the purpose for which such property has been held and used by said Indiana State Board of Agriculture.* (My italics.)

"Sec. 10. In order to create a fund with which to pay premiums and to meet interest obligations on any outstanding bonds or other evidences of indebtedness issued

or assumed by said board, as well as to provide a contingent sinking fund for the payment of any such obligation, there is hereby levied an annual tax of one-fourth of one cent on each one hundred dollars upon all of the taxable property in the State of Indiana, beginning with the year 1923 * * * $25,000 shall be available annually for the purpose of paying premiums * * * Such further sums shall be available for the purpose of meeting interest obligations on the outstanding bonds * * * issued or assumed by said board, and the balance of said funds if any shall be used to create a sinking fund for meeting the principal sums due on any such bonds or other evidences of indebtedness as they fall due: Provided * * * (any excess shall go into the general fund of the State treasury; the annual appropriation of $10,000 for premiums at the State Fairs after 1923 is repealed. * * *)" Acts 1921 p. 166, §§5, 10.

The only questions presented as to the validity of this act relate to the constitutionality of those provisions which purport to authorize the issue and sale of bonds for the purposes above stated, secured by a mortgage on the property conveyed by the Indiana State Board of Agriculture to the State of Indiana by the deed mentioned above, and the collection of taxes under the provisions of §10, supra.

The first point made by appellant is that said provisions violate Art. 11, §13, of the Constitution of Indiana (§212 Burns 1914), which forbids the creation of corporations, other than banking, by special act. But no question arises or can arise under the issues in the case at bar, as to whether the appellee board is a corporation or an unincorporated body, or, in case it be a corporation, whether the law under which it was organized was valid. Such matters are wholly collateral and immaterial. Whether the eighteen men who compose the

appellee board are legally organized as a corporation or not makes no difference in their power to represent the state, as trustee, by authority of such trustee, if this be trust property, or to act as agents of the state, under statutory authority, in the management of such property on its behalf, if it belongs to the state in some other capacity than that of a trustee.

The next point urged by appellant is based upon the contention of counsel that an absolute title to the property in question was conveyed to the state in consideration that it should assume the debts of the grantor in its political capacity, and that it thereby undertook to assume the debts of a private corporation. While counsel for the appellees insist that the State of Indiana took title under said deed only in trust for certain purposes, and that the bonds and mortgage, if executed, will be only the obligations of the trust estate, payable out of the trust property covered by the mortgage.

Sections 5 and 6, Art. 10, of the Constitution of Indiana read (in part) as follows: "§5. No law shall authorize any debt to be contracted on behalf of the State, except in the following cases: To meet casual deficits in the revenue; to pay the interest on the state debt; to repel invasion, suppress insurrection, or, if hostilities be threatened, provide for the public defense. §6. * * * nor shall the general assembly ever, on behalf of the state, assume the debts of any county, city, town or township, nor of any corporation whatever."

It appears from the facts found by the court that all debts of the Indiana State Board of Agriculture were fully paid by the state before this action was commenced. An injunction could not issue to forbid what was already done, nor does the appellant seek an injunction to prevent the state from assuming and paying those debts, which it has already paid, but he seeks to

prevent the issue and sale of bonds secured by a mortgage on the real estate in question for the purpose, among others, of reimbursing the state for money already expended. Therefore the section of the statute under consideration which forbids the state to assume the debts of any corporation does not apply to the facts of the case before the court.

It is obvious that the debt to be created by the proposed issue and sale of bonds and the execution of a mortgage securing them, for the purposes stated, will not be "to meet casual deficits in the revenue, to pay the interest on the state debt, to repel invasion, suppress insurrection, or * * * provide for the public defense." And if it will constitute a debt of the state, within the meaning of the Constitution, then the proposed acts intended to be done by the appellees, tending to create such a debt, may be enjoined. But if it will not be a debt of the state, then the trial court properly refused to issue an injunction. As was stated above, §5 of said act (Acts 1921 p. 166) authorized the execution and acceptance of a conveyance to the state of the property proposed to be mortgaged, "to be held by the state for the uses and purposes for which such property has been heretofore held and used by the Indiana State Board of Agriculture * * * (and in case it be sold) * * * to apply the proceeds derived therefrom to (such) purpose." (Acts 1921 p. 166, §5.) And the deed of conveyance recited that the property was conveyed to the State pursuant to the terms of said act, and upon the condition (among others) that the property conveyed was "to be held by the state in trust for the uses and purposes for which such property has been heretofore held and used by the Indiana State Board of Agriculture," but with power to sell and convey, in which

event the state "must apply the proceeds derived therefrom to the (said) uses and purposes."

A sovereign state may become the trustee of property to be used in carrying out a purpose for which the state was organized, if it consents to serve in that capacity. Perry, Trusts (6th ed.) §§40, 41; Lewin, Trusts (9th ed.) p. 28; *Yale College Appeal* (1896), 67 Conn. 237, 34 Atl. 1036; *State* v. *Blake* (1897), 69 Conn. 64, 36 Atl. 1019; *Bedford* v. *Bedford, Admr.* (1896), 99 Ky. 273, 35 S. W. 926; *Pinson* v. *Ivey* (1830), 1 Yerg. (Tenn.) 296, 309; *Penn* v. *Lord Baltimore* (1750), 1 Vesey, Sr. (Eng.) 444, 453.

The constitution under which the State of Indiana was organized in 1816 contained a recital that: "knowledge and learning, generally diffused through a community, being essential to the preservation of a free government," and a command that provision be made for the support of public schools and seminaries, and that: "the general assembly shall, from time to time, pass such laws as shall be calculated to encourage intellectual, scientific, and agricultural improvements, by allowing rewards and immunities for the promotion and improvement of arts, sciences, commerce, manufactures, and natural history." Indiana Constitution 1816, Art. 9, §1; R. S. 1843, pp. 57, 58. While that constitution was in force the Indiana State Board of Agriculture (said grantor) was chartered by act of the legislature, the charter giving it power "to hold state fairs at such times and places as they may deem proper and expedient, and have the entire control of the same, fixing the amounts of the various premiums offered, embracing every article of science and art, or such portions of them as they may deem expedient, and proper, calculated to advance the interests of the people of the State." Acts 1851 p. 7, §9; *Downing* v. *Indiana State Board, etc.*

(1891), 129 Ind. 443, 446, 28 N. E. 123, 28 N. E. 614, 12 L. R. A. 664.

Other provisions of the charter appropriated money for the use of said board, and authorized it to receive contributions and donations. This charter was amended from time to time, and frequent contributions were made for the support of the state fairs and the improvement of the grounds on which they were held, by appropriations from the state treasury. But the said board was a private corporation, with perpetual succession in the members chosen at the times and in the manner prescribed by the charter. *Downing* v. *Indiana State Board, etc., supra.*

The state constitution now in force, framed in 1851 by a convention the delegates to which had been chosen under statutory authority before the act creating said state board of agriculture was passed, after repeating the declaration above quoted from the constitution of 1816 as to knowledge and learning, generally diffused throughout a community, being essential to the preservation of a free government, ordained that, "It shall be the duty of the general assembly to encourage, by all suitable means, moral, intellectual, scientific, and *agricultural improvement,* and to provide, by law, for a general and uniform system of common schools, wherein tuition shall be without charge, and equally open to all" (My italics). Art. 8, §1, Constitution, §182 Burns 1914. That this authorized and commanded the legislature to provide for the support of schools and other means of diffusing knowledge by the use of taxes levied for that purpose does not admit of doubt. *Robinson* v. *Schenck* (1885), 102 Ind. 307, 1 N. E. 698; *Shepardson* v. *Gillette* (1892), 133 Ind. 125, 31 N. E. 788; *School City of Marion* v. *Forrest* (1906), 168 Ind. 94, 78 N. E. 187.

The language of the act of 1921 above quoted, by

which the conveyance of the property in question to the state and its acceptance on behalf of the state was authorized, and of the deed by which it was so conveyed, impressed such property and any proceeds which may be derived from its sale with the trust that they shall be used only for encouraging and promoting agricultural improvement, and carrying out the purposes to which it had been devoted by the Indiana State Board of Agriculture, by whom it was conveyed to the state. And since the Constitution of Indiana gives the state the right and imposes upon it the duty to encourage and promote agriculture improvement, science, manufactures, and the arts, and it has accepted the trust expressed in the deed as above set out and the conveyance of the trust property, by express action of its legislative and executive departments, the state now owns and holds such property as a trustee, with all the rights and powers of a trustee.

That a trustee may encumber the trust property, so far as authorized by law, to obtain money with which to discharge existing valid liens thereon, and to reimburse himself for what he has paid to protect it by satisfying such liens, and also to obtain money with which to make improvements thereon which are needed in order to carry out the purposes of the trust, and that the debts of the trust estate thereby created are not the personal debts of the trustee, but are only binding on him in his trust capacity, is elementary.

It follows that the proposed issue of bonds and the proposed mortgage to secure them, if executed for the purposes alleged, will be binding upon the State of Indiana only as a trustee, and upon the trust property covered by the mortgage, but will not constitute a debt of the state; and that said section of the act of 1921 (Acts 1921 p. 166) which authorizes them to be executed and issued is not unconstitutional.

Said act, as above recited, appropriates $25,000 annually for the purpose of paying premiums at the state fairs to be held in 1924 and thereafter, and also appropriates money in 1924 and thereafter, with which to pay the interest on the bonds proposed to be issued, and for the creation of a sinking fund to meet such bonds as they shall become due. And a tax of one-fourth of one cent on each $100 is levied by said act and ordered to be collected for such purposes, (beginning in 1923, payable in 1924) as above stated. Appellant insists that if this property is trust property, in the hands of the state as a trustee, and not the property of the state, and if the bonds, when executed and issued, will be the debt of the trust and not of the state, an appropriation of money raised by general taxation to pay liens on such property or to make improvements, thereon, or to pay debts of such trust incurred for those purposes, violates the rule of constitutional law above quoted, which forbids the state to incur debts for such purposes, and also the rule that public revenue raised by general taxation can only be used for public purposes.

If the statutory provisions for levying taxes and using the money to pay these bonds and the interest thereon were construed as an assumption by the state of the debt thereby evidenced, and as creating a debt of the state, for purposes forbidden by the constitution we should be bound to hold them void as being in conflict with the constitution. If construed and understood as binding the state to collect the tax of one-fourth of one cent on each $100 annually, and to use the money collected, or a substantial part of it, in paying the interest on the proposed bonds, and in creating a sinking fund with which to pay the principal as the bonds mature, the statute cannot be upheld. Being forbidden to bind itself by contract to assume the debts of the Indiana State Board of Agriculture, or to incur a debt for

the purpose of improving real estate not owned by it in any other than a trust capacity, the state cannot bind itself by contract to collect taxes and to use the money so collected for those purposes.

But if a statute be open to two constructions, one of which would bring it in conflict with the constitution and the other would not, the construction which will uphold it is to be preferred. And if its language is capable of a fair and reasonable construction by which it expresses a legislative intent that is not in conflict with the constitution, the courts must adopt such construction in preference to another construction under which it would express an intention to enact what the constitution has forbidden. *State* v. *Barrett* (1909), 172 Ind. 169, 174, 87 N. E. 7; *School Town* v. *Heiney* (1912), 178 Ind. 1, 6, 98 N. E. 628, 43 L. R. A. (N. S.) 1023, Ann. Cas. 1915B 1136; *Crittenberger* v. *State, etc., Trust Co.* (1920), 189 Ind. 411, 425, 127 N. E. 552.

An act of the legislature will not be declared unconstitutional unless the fact that it violates one or more provisions of the Constitution so clearly appears as to exclude all doubt. All presumptions must be indulged in favor of the validity of such an act until a necessary conflict between it and the Constitution is shown. *Robinson* v. *Schenck, supra; Smith* v. *Board, etc.* (1910), 173 Ind. 364, 90 N. E. 881.

Private ownership of property is not conclusive as to whether a use to which it is devoted is public or private. If holding annual exhibitions of agricultural products, live stock, machinery, and other articles, at state fairs, is educational, and a means of intellectual, scientific and agricultural improvement, then it is a public purpose for which the legislature is expressly authorized by the constitution to make provision by law. Art. 8, §1, Constitution.

And if vesting the ownership and control of the state

fairgrounds in a trustee for the use and purpose to which they have been devoted for many years past, and paying for improvements thereon which are necessary in carrying out the trust purposes, constitute a public purpose, then the legislature may lawfully appropriate money for that purpose, after it shall have been collected by taxation, although not permitted to bind itself in advance to make such payments. The legislative department of the state having decided that satisfying the liens on the state fairgrounds and erecting improvements thereon is a public purpose the courts will accept its decision as conclusive on that question.

This court has repeatedly decided that where money is appropriated out of a public treasury for a use that is public, and is given in such a way and under such restrictions that it can only be devoted to public use, it is for the legislature alone to determine what agency it will employ to control the expenditure of the money for that purpose. *Bullock* v. *Billheimer* (1911), 175 Ind. 428, 94 N. E. 763; *State, ex rel.* v. *Meeker* (1914), 182 Ind. 240, 105 N. E. 906; *City of Indianapolis* v. *Indianapolis Home, etc.* (1875), 50 Ind. 215.

The statute under consideration does not bind the state to collect taxes at any time nor in any amount with which to pay the debt in question. It merely enacts that some three years after it took effect, being after the close of the next regular session of the legislature, certain taxes shall be levied and that the proceeds, when collected, shall be paid to appellee board for the uses stated. And purchasers of the proposed bonds, if issued, and other creditors of the trust estate represented by the Indiana board of agriculture, will have no security for payment of the debt evidenced by any such bonds, except the trust property on which it is made a lien, in case those acts are done which appellant is seeking to enjoin. That part of the statute

which commands the levy of a tax and appropriates money for the use mentioned is subject to be repealed at any time, if the legislature shall so determine, even before any taxes shall have been collected, and purchasers of the bonds will have no cause to complain if this is done. But if the state shall voluntarily collect money by taxation it may voluntarily appropriate it to any public purpose, without incurring a debt or otherwise violating any provision of the constitution.

The appropriation from the public treasury of money to be raised by taxation to aid in the conduct of state fairs annually, as a means of education and agricultural improvement, and putting its expenditure under the control of a board chosen in the manner and charged with the duties as provided in the act under consideration, does not violate the constitution by taking public money from the treasury for private use, or by collecting taxes in the name of the public for private use. With the expediency of the act the courts have nothing to do. That is a question for the legislature, which has the same power to repeal the law for levying this tax that it had to pass it.

In my opinion the act in question is not open to any of the objections urged against it, but is constitutional.

The judgment ought to be affirmed.

### DISSENTING OPINION.

MYERS, C. J.—I cannot agree with the opinion of Willoughby, J., concurred in by Townsend, J., nor with the opinion of Ewbank, J. Therefore, it will not be out of place for me to briefly state my conclusions on the questions here involved.

It will not be necessary for me to state the purpose for which this suit was brought, nor to reiterate the special findings of fact and conclusions of law of the trial court, as they are fully set out in Justice Willough-

by's opinion. It must be conceded that the questions presented by the record in this case involve the validity of an act of the general assembly approved March 3, 1921. Acts 1921 p. 166. The opinion of Justice Willoughby holds that §§5, 9, and 10 of the act, *supra,* are invalid and that without these sections the act is meaningless and therefore void. In speaking of the two boards mentioned in the act, I will refer to the Indiana State Board of Agriculture as the state board, and the Indiana board of agriculture as the Indiana board.

Section 5 of the act, *supra,* is the section that provides the method and manner of transferring the property from the state board to the Indiana board. It is the authority for the deed of conveyance. Hence, any language or stipulation in the deed not warranted by the authority for its execution must be disregarded. Justice Willoughby, in his opinion, held that the language used in the act, *supra,* was plain and unambiguous, and therefore there was no ground for construction. In that statement, in my judgment, lies the error in this opinion for holding §5 invalid.

In *Downing* v. *Indiana State Board, etc.* (1891), 129 Ind. 443, 28 N. E. 123, 28 N. E. 614, 12 L. R. A. 664, it was held that the Indiana State Board of Agriculture was a private corporation managed and controlled by trustees for the benefit of the people of the state. And I may add that these trustees, in the management and control of the property thus entrusted to them, were charged with one general purpose, that of encouraging the industrial and agricultural interests of the people of the state.

The general activities obviously expected from the state board, and the benefits to the public resulting therefrom, were not materially changed by the duties imposed upon the organization created by the 1921 act. I believe it is safe to say that no one will contend that

the general assembly of this state is without power to provide the instrumentalities for encouraging agricultural improvements. This assertion is based upon the constitutional provision, "It shall be the duty of the general assembly to encourage by all suitable means, * * * agricultural improvements. * * *." Art. 8, §1, Indiana Constitution. A casual reading of the 1921 act will convince any such person that it was the legislative intention to thereby comply with this constitutional provision. Courts, in passing on the constitutionality of a statute, should indulge the presumption that the general assembly understood and correctly appreciated the needs of its own people, and that it had before it facts and circumstances justifying its action. 6 R. C. L. p. 111, §111; 2 R. C. L. Supp. p. 31, §111.

In the case at bar it appears from the act itself, as well as from the record, that at the time the act was passed, the state board, as a result of its business management, was largely indebted to various persons, firms and corporations in the aggregate of $400,000. From the record we learn that the major part of this indebtedness was due and payment had been demanded. At that time, and for a year prior thereto, it was a matter of common knowledge that this country was engaged in the financial readjustment of its business affairs. This situation, coupled with that board's apparent unsuccessful business career, would undoubtedly justify the presumption that, although the state board had $2,-000,000 of assets, it would be difficult for it to obtain the money with which to liquidate its indebtedness. This dilemma of the state board, and its purpose to unload it, was no doubt known to the legislature. That body, in the year 1891, created the state agricultural and industrial board, and attempted to abolish the state board of agriculture and transfer its assets, liabilities and credits to the new board. It was then unsuccessful.

(*Downing* v. *Indiana State Board, etc., supra.*) Its then unsuccessful purpose, it was given the opportunity to accept in 1921. That it might take advantage of this opportunity to meet the constitutional mandate to provide means for agricultural improvement, and that it might have a closer relation with the work, no doubt had a persuasive influence if not the inducement for passing the 1921 act.

At this point it may be noted that there was no attempt on the part of the legislature, by the new act, to form a new corporation and authorize it to accept the assets and assume the liabilities of the state board. Moreover, it should be further noted, as a fundamental principle to be observed by the courts in determining the constitutionality of statutes, that the members of the legislature are presumed to have obeyed their oath and to "have been careful to observe the requirements of the constitution in enacting statutes and that no violation of the constitution has been intended by them." 6 R. C. L. p. 101, §99; 2 R. C. L. Supp. p. 26, §99. This presumption in mind, it is hardly supposable that the legislature, by §5 of the 1921 act, intended that the state should take the property and assets of the state board and assume its liabilities, in the face of Art. 10, §§5 and 6, of our state Constitution, which expressly inhibits the state from incurring a debt for that purpose, or of assuming the debts of any corporation. Hence, there seems to be an obvious perplexity requiring thoughtful examination of the particular sections and provisions of the act here challenged. In making this examination we should keep in mind the rule that an act should not be declared invalid if there be any doubt as to its invalidity, or if it or its supposable objectionable provisions are subject to more than one possible construction, the courts will adopt that one, if reasonable, which will preclude unconstitutionality. *Crittenberger*

v. *State, etc., Trust Co.* (1920), 189 Ind. 411, 127 N. E. 552; *State* v. *Louisville, etc., R. Co.* (1911), 177 Ind. 553, 96 N. E. 340, Ann. Cas. 1914D 1284; *State* v. *Barrett* (1909), 172 Ind. 169, 87 N. E. 7; *Cain* v. *Allen* (1906), 168 Ind. 8, 79 N. E. 201, 79 N. E. 896; *State* v. *Lowry* (1906), 166 Ind. 372, 390, 77 N. E. 728, 4 L. R. A. (N. S.) 528, 9 Ann. Cas. 350; *State* v. *Gerhart* (1896), 145 Ind. 439, 44 N. E. 469, 33 L. R. A. 313.

To my mind, the language used in §5 of the act in question was not so clear and unambiguous as to free the court from the duty of placing a construction upon it. In the first place, the words "fee simple title" as used may be said to indicate a purpose on the part of the state board to vest, and the state to receive the most extensive interest that can be enjoyed in land, which cannot exist if the power of disposition is hampered by a restriction destroying the absolute dominion inherent in the owner of the fee. *Allen* v. *Craft* (1887), 109 Ind. 476, 483, 9 N. E. 919, 58 Am. Rep. 425. Hence, the words "fee simple" are to be given the force warranted by the language with which they are used. Consequently, they do not necessarily mean a fee simple absolute. 16 Cyc 602. Therefore, when we consider the language of the first part of §5 in connection with the proviso, which should be done, apt words will be found limiting the state's title to the property to certain specific uses and purposes in the interest of the people of the state, which is entirely inconsistent with fee simple ownership. True, the state was given the right to sell, but inseparably connected with this right is a limitation controlling the proceeds derived from such sale into a channel for the improvement of agriculture, the machinery for the management of which, as well as of the property conveyed, was fully created in the first four sections of the act.

It is my opinion that, as the language of §5 is ambigu-

ous and its meaning clouded, the state board, as it had the right to do, by the language of the proviso defined the estate granted as intended by this section. *Adams* v. *Merrill* (1908), 45 Ind. App. 315, 322, 85 N. E. 114, 87 N. E. 36. At this point, attention again should be drawn to the rule: "That in construing a statute it is to be done with a view to uphold it, if that is fairly possible, and that if it be of doubtful constitutionality, the doubts are to be resolved in favor of the enactment." *Hovey, Governor,* v. *State, ex rel.* (1889), 119 Ind. 395, 399, 21 N. E. 21.

From what has been said, the conclusion must follow that the language of §5 of the act in question did not authorize the state to receive from the state board a fee simple title to its property in the sense of the highest estate known to the law, but it did authorize a conveyance "for the uses and purposes for which such property has been heretofore held and used by the Indiana State Board of Agriculture." The uses and purposes for which the state board held this property has been defined by this court as "for the benefit of the people of the state." *Downing* v. *Indiana State Board, etc., supra,* p. 452.

In my judgment, the language of §5 of the act should be construed, as the above conclusion implies, as authorizing the state to accept from the state board a conveyance of its property in trust for the benefit of the people of the state. That the state may so act and execute the trust is affirmed by good authority. 1 Perry, Trusts and Trustees, (6th ed.) §§40, 41; Lewin, Trusts, (9th ed.) p. 28. A deed of conveyance then, in compliance with the statute, is the final instrument for thus vesting the property. The trust will thereby be manifested, the fiduciary relations stated, and the conditions of the trust set forth with sufficient certainty. *Nesbitt* v.

*Stevens* (1903), 161 Ind. 519, 69 N. E. 256; *Richards* v. *Wilson* (1916), 185 Ind. 335, 112 N. E. 780.

It is also insisted that the clause "and on condition that the said grantee named in such conveyance assume the payment thereof," found in the proviso of §5, and the clause "and the payment of which may be assumed by said board pursuant to the provisions authorized in this act," and the further clause, "the payment of which may be necessary in connection with obtaining said . transfer and conveyance of the property of the Indiana State Board of Agriculture, or the payment of which may have been assumed by the Indiana board of agriculture as heretofore provided for," found in §9, expressly require, as a condition for the conveyance, the assumption by the state of the state board's indebtedness, and the incurring of a debt by the state, thereby rendering these sections invalid in their entirety. This contention can be sustained only upon the theory that the questioned clauses cannot be stricken out of their respective sections without destroying the provisions with which they are associated. In my opinion, these clauses may be stricken out without doing any violence to either section. If so, and the remainder of each section is complete in itself, sensible and capable of being executed, then unquestionably they should be upheld. *Swartz* v. *Board, etc.* (1902), 158 Ind. 141, 152, 63 N. E. 31; *State* v. *Barrett, supra.*

It may be said that the clauses which I would strike out are so connected with the remaining portion of their respective sections that the legislature would not have passed the one without the other. I cannot agree with that thought, for the reason that the legislature, in this matter, represented the people of the state. It had limited powers. The presumption obtains that it intended to act within the scope of its authority. It was expressly prohibited from incurring, on behalf of the state,

the debt proposed, and from obligating the state to assume the debts of the state board. It was dealing with the state board, a legal entity, charged with knowledge of all of the constitutional inhibitions on legislative action. The state board then must be regarded as having known that the provisions in §§5 and 9, to which I have referred, as well as §10 in its entirety, were absolutely void, in that their enactment was clearly prohibited by our state Constitution. Hence, it cannot be said that the state board was thereby in any manner overreached, or that it would have acted differently had these void provisions been omitted. On the other hand, I am at a loss for a single reason, or for any proper motive, or for a reason supported by good business judgment, that would be persuasive as an inducement for the legislature to pass the enactment it did, and here questioned, in preference to one which would lessen the obligations of the people it represented, and one permissible by the Constitution which the members of the legislature took an oath to support.

At this point special attention may be given §10. This section proposes, in the year 1923 and thereafter, to levy an annual tax, and from the proceeds of which $25,000 shall be available annually for the purpose of paying premiums, "and to meet interest obligations on any outstanding bonds or other evidence of indebtedness issued or assumed by said Board, as well as to provide a contingent sinking fund for the payment of any such obligations * * *." While I am of the opinion that the state as trustee may encumber the trust property for the purpose of obtaining money with which to discharge existing valid liens thereon, and to reimburse herself for money paid to protect the trust estate, and for the purpose of making improvements thereon which are needed in order to carry out the purposes of the trust, yet such obligations cannot be regarded as a debt

"to meet casual deficits in the revenue; to pay the interest on the state debt; to repel invasion, suppress insurrection, or,   *   *   *   provide for the public defense," within the meaning of the Constitution.   Art. 10, §5, Constitution.   Hence, to levy taxes for the purpose of paying any such debts would be indirectly doing an act expressly inhibited by our state Constitution.   As §10 clearly contemplates the raising of money by taxation to pay a debt which the legislature is without power to contract, or which it cannot assume, the conclusion must follow that this section is unconstitutional.

I am therefore fully persuaded that, had the legislature been fully advised as to the objectionable features of the enactment here pointed out, it would have been more readily agreed to the act with those provisions out than with them in.   I am also clearly of the opinion that with these objectionable provisions eliminated, the act will then be complete, sensible, workable and enforcible.

It follows from what has been said that, upon the facts found, the appellant was entitled to an injunction forbidding the levy of the taxes in question, and forbidding the state to issue bonds, in anywise a debt or obligation of the state.   He was not entitled to an injunction forbidding the appellee board and the individuals who compose it to execute bonds and a mortgage on the "State Fair Grounds" securing their payment.   These bonds and mortgage cannot be regarded other than the obligations of the state as trustee, and the mortgage security should be restricted entirely to the trust estate in the possession and under the control of the state as trustee.

While this view of the case leads to a reversal of the judgment, the mandate should be:   Judgment reversed, with directions to the trial court to restate its conclusions of law in accordance with this opinion.